Andrew NEWELL, et al., Appellants,

v.

DISTRICT OF COLUMBIA,
et al., Appellees.

No. 93–CV–425.

District of Columbia Court of Appeals.

Argued May 4, 1999.
Decided Nov. 24, 1999.

that remand is pointless because the RHC could not reasonably sustain the examiner's decision on the merits.

Joan Harvill for appellants.

James C. McKay, Jr., Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellees.

Before STEADMAN, FARRELL and REID, Associate Judges.

REID, Associate Judge.

As a result of appellant Betty Newell's February 1989 fall on an icy sidewalk in front of a District of Columbia Public School where she worked, she and her husband, appellant Andrew Newell, filed a wrongful death, survival, and negligence action on April 20, 1990 against appellees, the District of Columbia and several public school employees, alleging, *inter alia*, that their negligence was the proximate cause of the pre-birth injury to and death of their infant son, Andrew Newell, III, as well as Mrs. Newell's injury and Mr. Newell's loss of consortium. Before the civil action was filed, Mrs. Newell lodged a workers' compensation claim for disability benefits with the Department of Employment Services ("DOES"). On August 14, 1992, a final compensation order was issued, by the Deputy Director for Labor Standards, affirming the hearing officer's recommended award of disability income benefits as well as medical expenses relating to the 1989 fall.

Appellants then dismissed Mrs. Newell's negligence and Mr. Newell's loss of consortium claims in the civil action, and moved for partial summary judgment on their wrongful death and survival actions, on the grounds of *res judicata,* issue preclusion, and collateral estoppel, as to certain facts relating to Mrs. Newell's injury, including its cause. The motion was denied and the case proceeded to trial. The jury found in favor of the District on the issue of negligence and the proximate cause of the injury to and death of Andrew Newell, III. Subsequently, the trial court denied appellants' motion for a new trial, and/or judgment notwithstanding the verdict.

On appeal, appellants contend, *inter alia,* that the trial court erred by (1) denying their motion for a new trial or judgment notwithstanding the verdict; (2) refusing to instruct the jury that the District's violation of its "snow and ice emergency regulations ... constituted evidence of negligence"; and (3) denying their pre-trial motion for partial summary judgment based on the factual findings in Mrs. Newell's workers' compensation proceeding. Finding no trial court error or abuse of discretion, we affirm.

## FACTUAL SUMMARY

The record on appeal reveals the following facts. On February 6 or 7, 1989, Mrs. Newell, a 42 year old secretary at Ballou High School who was then 19 weeks pregnant, reported to work. The weather was bad due to sleeting. Mrs. Newell remained in her car until the sleeting stopped. As Mrs. Newell exited her car and began walking towards the school door, she slipped and fell on an untreated icy sidewalk. After the fall, she noticed that her undergarments were wet either from a bladder discharge or leaking amniotic fluid. Despite the persistent wetness, she continued to work until February 14, 1989, when her water broke while she was at work.

Later on the day that her water broke, Mrs. Newell's husband took her to the doctor's office. Dr. Elise Smith diagnosed the wetness as leaking amniotic fluid. Due to the leaking amniotic fluid, Mrs. Newell was hospitalized from February 14, 1989 until April 29, 1989. On April 26th she gave birth to a premature child at 29 weeks. The child had complications and died 12 hours after birth.

At trial on their wrongful death and survival actions, the Newells argued, *inter alia*, that the District's negligence in failing to clear off or treat the sidewalks in accordance with its Snow Emergency Operations Plan for D.C. Public Schools, led to her fall and the injury which resulted in the wrongful death of Andrew Newell, III. In particular, the Newells argued that it was Mrs. Newell's fall on February 6, 1989, in front of Ballou High School, which caused her amniotic fluid to begin leaking and led to Andrew Newell's infection and premature birth.[1]

To counter the Newells' assertions, the District presented evidence which showed that prior to her 1989 fall, Mrs. Newell had had a number of unsuccessful pregnancies: "two of which . . . resulted in spontaneous abortion or late miscarriage, one of which was a term delivery, and one pregnancy that resulted in premature rupture of membranes and subsequent premature delivery prior to this pregnancy." Further, Dr. Jeffrey King testified that "[Mrs. Newell's] pregnancy· was complicated obviously by her advanced age. It was complicated by her history of having undergone premature rupture of membranes in a prior pregnancy." In addition, Dr. King testified that a rupture of membranes, as confirmed by Dr. Smith during Mrs. Newell's February 14, 1989 doctor's visit, caused the "gush of amnio [fluid]" and continual leakage. Dr. King also testified that the spontaneous rupture of mem-

branes, in his opinion, led to Andrew Newell, III's premature birth and death, and that Mrs. Newell's fall on February 6, 1989, was not of sufficient force to rupture her membranes. Beyond this, Dr. King testified that since Mrs. Newell had had a previous miscarriage due to ruptured membranes she was at a risk "may be two to two-and-a-half times as great" as having subsequent miscarriages due to ruptured membranes. In addition, one of the District's defenses appeared to be that Mrs. Newell was contributorily negligent or assumed the risk of getting out of her car when sleet was on the ground because she knew it was dangerous to be on the street in such weather.

The jury was presented with a general verdict form. On December 11, 1992, the jury found in favor of the District. On December 19, 1992, the Newells filed a motion for a new trial and/or judgment notwithstanding the verdict. On March 5, 1993, the motion was denied and appellants timely appealed.

## ANALYSIS

*Denial of "motion for new trial and/or judgment notwithstanding the verdict"*

 The Newells contend that the trial court erred by not granting their motion for judgment notwithstanding the verdict since they had "met their burden of proof on every element of negligence," and because the trial court committed reversible error by giving instructions to the jury which imputed the contributory negligence and assumption of risk of the mother to the infant. "Generally, a motion for judgment after trial and verdict is granted only in 'extreme cases.'" *United Mine Workers of America, Int'l Union v. Moore,* 717 A.2d 332, 337 (D.C.1998) (quoting *Daka, Inc. v. Breiner,* 711 A.2d 86, 96 (D.C.1998)

---

1. At trial, Dr. Sharon Lee Marban testified that Andrew Newell, III's autopsy confirmed that his lungs had an infection from a growth of bacteria, and that hypoplasia was the primary cause of death. Further, Dr. Marban testified that in her opinion, the lack of amniotic fluid received by the baby due to the leakage of amniotic fluid, was the direct cause of the baby's hypoplasia.

(citation and internal quotations omitted)). "'We review the denial of such a motion deferentially. Reversal is warranted only if no reasonable person, viewing the evidence in the light most favorable to the prevailing party, could reach a verdict for that party.'" *Id.* (quoting *Daka, supra.* 711 A.2d at 96 (citation and internal quotations omitted)). *See also Oxendine v. Merrell Dow Pharmaceuticals, Inc.,* 506 A.2d 1100, 1103 (D.C.1986). We review the trial courts denial of a motion for new trial "only for abuse of discretion." *Id.* "To grant a motion for a new trial, the trial court must find that the verdict is against the weight of the evidence, or that there would be· a miscarriage of justice if the verdict is allowed to stand." *United Mine Workers, supra,* 717 A.2d at 337 (citing *Gebremdhin v. Avis Rent–A–Car Sys., Inc.,* 689 A.2d 1202, 1204 (D.C.1997)).

■ "[V]iewing the evidence in this case in the light most favorable to the prevailing party," we conclude that a reasonable juror could find for the District. The evidence at trial showed that Mrs. Newell had a history of miscarriages, and thus, a reasonable juror could find that the premature birth and the death of Andrew Newell, III was caused by factors other than Mrs. Newell's slip and fall on February 6, 1989.

The Newells challenge the trial court's judgment, first, by arguing that a miscarriage of justice resulted when the trial court refused to give jury instruction 5–15[2] which, at the time of trial, stated that where a parent and child assert separate causes of action, "contributory negligence on the parent's part alone prevents only the parent's recovery, and not that of the child." They contend that the trial court had an obligation to read jury instruction 5–15 since Andrew Newell, III was a "viable child" because he was born alive after his injury in the womb, and thus, he had a separate cause of action from his mother. Therefore, his mother's contributory negligence may not be imputed to him. The District argues that Andrew Newell, III was not a "viable child" at the time of injury and that the trial court did not err in refusing to give instruction 5–15. Moreover, the District maintains, the Newells are estopped from challenging on appeal the trial court's instruction on contributory negligence and assumption of risk because "they did not seek special verdicts on the issues of contributory negligence and assumption of risk."

We turn first to the District's argument that the Newells are estopped from challenging the trial court's instruction on contributory negligence and assumption of risk because they did not request special verdicts on those issues. After the trial judge gave final instructions to the jury, he informed counsel for both parties: "We're going to have to get a verdict form together. I thought we had it." Counsel for the District responded: "Your Honor, I did submit one yesterday that I thought the Court was going to use." Plaintiffs' counsel said: "I submitted one this morning, Your Honor." The trial judge replied that the form submitted by plaintiffs' counsel "had too much in it" and defense counsel's "[didn't] have enough." Each counsel objected to the other's jury verdict form, without specifying why. The trial judge then announced: "I will prepare [the jury verdict form] and let you then tell me why it's not right." Later, after reviewing the trial court's proposed jury verdict form, counsel for the District stated: "It does not have our assumption of the risk or contributory negligence in it." The trial

---

2. Jury instruction 5–15 (1981) stated:
In this case, there are two plaintiffs, a parent and his (her) child, each asserting separate causes of action as a result of the child's injury. Contributory negligence on the child's part has a twofold effect: It will prevent both his (her) recovery and that of his (her) parent. However, contributory negligence on the parent's part alone prevents only the parent's recovery, and not that of the child.
(Jury instruction 5–15 (1981) has been superseded by jury instruction 5–16 (1998)).

judge said: "I'm not including that. I've instructed them on that. I don't include that on the verdict form.... I intentionally left that out."

Plaintiffs' counsel made no request that the jury verdict form contain interrogatories pertaining to contributory negligence or assumption of risk. Instead, she focused on the compensation section of the court's proposed jury form. The court asked counsel: "Do you have any other comment?" Plaintiffs' counsel again focused on damages. The court asked a second time: "Anything else?" Neither counsel raised any other question concerning the jury verdict form. Thus, the record reveals no request by plaintiffs' counsel for a special jury verdict form with respect to contributory negligence or assumption of risk during the discussion with the trial court. In addition, the record does not contain the jury verdict forms which she submitted to the court. Furthermore, in her reply brief on appeal, the Newells' counsel does not assert that her proposed jury verdict form contained special interrogatories pertaining to contributory negligence and assumption of risk. Rather, she points to the District's inquiry as to why the trial judge's jury verdict form did not include contributory negligence and assumption of risk, and notes that the trial judge "intentionally left that out."

It is true that plaintiffs' counsel clearly requested that the trial judge give instruction 5–15, saying, *inter alia,* "one of the defenses against contributory negligence is contained in Jury instruction [5–15] that says the child who is brought along by a parent is not contributorily negligent." When the trial judge refused to give the instruction, counsel for plaintiff pressed the point to no avail, finally asking the court to "note my objection." Despite the request for the jury instruction, our decision in *Nimetz v. Cappadona,* 596 A.2d 603 (D.C.1991) clearly states that there must be a request for a special verdict form:

[A] defendant who fails to request a special verdict form in a civil case will be barred on appeal from complaining that the jury may have relied on a factual theory unsupported by the evidence when there was sufficient evidence to support another theory properly before the jury.

596 A.2d at 608. *See also Robinson v. Washington Internal Med. Assocs.,* 647 A.2d 1140, 1145 (D.C.1994) ("[A] plaintiff who fails to request either a special verdict or a general verdict with interrogatories, in a negligence action where the defense both denies negligence (or, relatedly, proximate causation) and asserts an affirmative defense, is estopped from contending on appeal that the jury may have relied on an impermissible affirmative defense theory if the evidence supports an alternative rejection of primary negligence by the jury."). This requirement cannot be interpreted to mean only that counsel must utter the words "special verdict form" without an explanation of what should be included in that form or the inclusion in the record on appeal of the requested jury verdict form. Furthermore, we have said repeatedly that: "In both criminal and civil appeals, the appellant bears the burden of presenting this court with a record sufficient to show that error occurred at trial." *Cole v. United States,* 478 A.2d 277, 283 (D.C. 1984) (citing *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982) (other citations omitted)).

 Accordingly, we hold that not only is counsel in a civil case required to request a special verdict form to preserve a claim of error relating to fewer than all of the theories of liability (or defenses thereto) on which the jury permissibly could have based its verdict, but that in requesting a special verdict form, counsel must state the request with sufficient precision to indicate the specific interrogatories that should be included in the special verdict form, object to their noninclusion, and include the proposed special verdict form in the record on appeal. Because

counsel for the Newells did not do so in this case, the Newells are estopped on appeal from challenging the trial court's refusal to give jury instruction 5–15. Therefore, we do not reach the issue as to whether Andrew Newell, III was a "viable child" at the time the fetus was injured.

■ The Newells raise other issues regarding their motion for a new trial and/or judgment notwithstanding the verdict which they press on appeal, including other complaints about the trial court's jury instructions. They maintain that the trial court erred when reading jury instructions 5–14 and 5–16 by including language "not found in the official jury instructions, not in conformity with the law and not previously agreed upon by the parties." The Newells did not object to the modified language used by the trial court when giving jury instructions 5–14 and 5–16. Under Super. Ct. Civ. R. 51, "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." "The purpose of [R. 51] is to give the trial judge an opportunity to reconsider and, if neces-

sary, correct his [or her] proposed charge." *Ceco Corp. v. Coleman,* 441 A.2d 940, 947 (D.C.1982) (citations omitted). "Objections must be 'sufficiently specific to bring into focus the precise nature of the alleged error.'" *District of Columbia v. Mitchell,* 533 A.2d 629, 636–37 (D.C.1987) (quoting *Ceco Corp., supra,* 441 A.2d at 947) (quoting *Palmer v. Hoffman,* 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645 (1943)). We have previously made clear that: "Those errors raised for the first time on appeal are not grounds for reversal unless it is apparent from the face of the record that a miscarriage of justice has occurred." *Mark Keshishian & Sons, Inc. v. Washington Square, Inc.,* 414 A.2d 834, 839–40 (D.C.1980) (quoting *Weisman v. Middleton,* 390 A.2d 996, 1000 (1978)) (internal quotations omitted). "This is essentially the language of 'plain error.'" *District of Columbia v. Banks,* 646 A.2d 972, 978 (D.C.1994) (citing *District of Columbia v. Wical Ltd. Partnership,* 630 A.2d 174, 182–83 (D.C.1993)).

■ While it is clear from the record that the trial court modified the jury instructions by adding further explanation to 5–14[3] and by adapting 5–16[4] to the facts of this case, the jury instructions, when

---

**3.** Jury instruction 5–14 (1981), which was later superseded by jury instruction 5–15 (1998), provided:

A plaintiff cannot recover if his negligence is a proximate cause of his injury. The defendant has the burden of proving that the plaintiff's negligence was a cause of the plaintiff's injury.

After reading jury instruction 5–14, the trial court added, *inter alia:* "Because this jurisdiction has not adopted comparative negligence the Plaintiff is barred from recovery [ ][i]f her negligence was a substantial factor in causing the injury even if [the District] was also negligent as long as the Plaintiff's negligence contributed in some degree to her injury."

**4.** Jury instruction 5–16 (1981), which was superseded by jury instruction 5–17 (1998) provided:

In this case, the defendant contends that the plaintiff assumed the risk and that this action on the part of the plaintiff caused the injury. You are instructed that if you find

that the plaintiff assumed the risk then he (she) is not entitled to recover. To find assumption of risk, the evidence must show the following:

(1) That the plaintiff knew or should have known of the existence of a dangerous situation, and

(2) That the plaintiff voluntarily exposed himself/herself to danger.

The defense of assumption of risk is not applicable if you find that the plaintiff had the duty or the legal right to expose himself to any of the damages in question.

In relation to jury instruction 5–16 the trial court stated:

The defense of assumption of risk is not applicable if you find that the Plaintiff had the duty or legal right to expose herself to any of the damages in question. If you find that the plaintiff voluntarily exposed herself and the fetus she was carrying to a known and appreciative risk, the icy sidewalk, she may be found to have assumed the risk.

read as a whole, contained the essential language of both 5–14 and 5–16. "Accordingly we conclude that the instructional [modifications] in question did not constitute plain error, nor did [they] result in a miscarriage of justice." *Banks, supra,* 646 A.2d at 978.

■ The Newells contend, for the first time on appeal, that the trial court committed reversible error "in explaining the law of equality of litigants to the jury" by stating that jurors were "not to give anything to the [Newells] or take anything from the District." Since the Newells failed to object to this instruction at trial, we review only for plain error or miscarriage of justice. *See Banks, supra,* 646 A.2d at 972. The trial court's statements before and after giving the equality of litigants charge mitigated any potential prejudice. For instance, the trial court began by stating:

> If any expression of mine has seemed to indicate an opinion relating to any of these matters I instruct you to disregard the seeming indication. Now you must remember also that these are parties of equal—both of these sides are parties of equal standing in this court.

The trial court further declared: "All persons, including municipal corporations stand equal before the law [and] are entitled to be dealt with as equals in a court of justice.... You are not to base [your judgment] on anything but the facts as they have been presented in this case." Given these instructions to the jury, we see neither plain error nor miscarriage of justice relating to the trial court's equality of litigants jury instruction.

■ The Newells argue, also for the first time on appeal, that the trial court erred when it refused to read jury instructions 5–8 and 5–9 (1981).[5] Both jury instructions 5–8 and 5–9 related to violations of a regulation or a statute as negligence

*per se.* Although the Newells refer to the Snow Emergency Operations Plan as a regulation in their brief, the plan is not a regulation or a statute, but rather an internal procedure for snow and ice removal by the D.C. public schools. *See Clark v. District of Columbia,* 708 A.2d 632, 636 (D.C. 1997) ("We have noted in another context that '[a]gency protocols and procedures, like agency manuals, do not have the force or effect of a statute or an administrative regulation,' but rather 'they provide officials with guidance on how they should perform those duties which are mandated by statute or regulation.'") (quoting *Wanzer v. District of Columbia,* 580 A.2d 127, 133 (D.C.1990)). Indeed the trial court when refusing to read jury instructions 5–8 or 5–9 informed the Newells that the plan was "a procedure .... But it's not a—not a regulation in the traditional sense"; to which the Newells' counsel responded, "[a]ll right." Since the plan was neither a regulation nor a statute we agree with the trial court that jury instructions 5–8 or 5–9 were inapplicable to this case. *See Clark, supra,* 708 A.2d at 636. Therefore, there was no error, let alone plain error, with respect to the trial court's refusal to instruct the jury that the District's violation of its snow and ice emergency plan constituted negligence *per se.*

### Denial of partial summary judgment

The Newells contend that the trial court committed reversible error "when it denied [their] pre-trial motion for partial summary judgment." They assert that the doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) bar relitigation of the fact, cause and nature of Mrs. Newell's injury, all of which were decided in her workers' compensation proceeding. The District asserts that *res judicata* or claim preclusion is inapplicable and that with respect to the Newell's reliance on offensive collateral estoppel, "the

---

5. These jury instructions have been superseded by standardized civil jury instructions 5–9

and 5–10 (1998).

trial court did not abuse its broad discretion in denying preclusive effect to the DOES decision."

"Under the doctrine of claim preclusion or *res judicata,* when a valid final judgment has been entered on the merits, the parties or those in privity with them are barred, in a subsequent proceeding, from relitigating the same claim or any claim that might have been raised in the first proceeding." *Washington Med. Ctr. v. Holle,* 573 A.2d 1269, 1280–81 (D.C. 1990) (citing *Smith v. Jenkins,* 562 A.2d 610, 613 (D.C.1989) (other citation omitted)). Collateral estoppel or issue preclusion,

> "renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum."

*Davis v. Davis,* 663 A.2d 499, 501 (D.C. 1995) (quoting *Holle, supra,* 573 A.2d at 1283) (other citations omitted). "Offensive use of collateral estoppel arises when a plaintiff seeks to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Ali Baba Co. v. WILCO, Inc.,* 482 A.2d 418, 421–22 (D.C.1984) (citing *Parklan[e] Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

We agree with the District that *res judicata* or claim preclusion is inapplicable to this matter because the Newells "do not argue that any particular *claim* should have been precluded. . . ." (Emphasis supplied). We also agree with the District that the trial court did not abuse its discretion by refusing to apply the doctrine of offensive collateral estoppel to give preclusive effect to DOES's findings in Mrs. Newell's disability claim.

Under offensive collateral estoppel, "[t]he issue to be concluded must be the same as that involved in the prior action," and "must have been raised and litigated, and actually adjudged." *Ali Baba Co., supra,* 482 A.2d at 421 n. 6 (quoting 1B Moore's Federal Practice ¶ 0.443[1] (2d ed.1982)). In addition, "[t]he issue must have been material and relevant to the disposition of the prior action," and "[t]he determination made of the issue. . . . must have been necessary and essential to the resulting judgment." *Id.* We apply the doctrine of offensive collateral estoppel with some caution, however, because it "presents issues relating to the potential unfairness to a defendant." *Ali Baba Co., supra,* 482 A.2d at 422. Consequently, " 'the preferable approach for dealing with these problems in federal courts [and in our court] is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied .' " *Id.* (quoting *Parklane Hosiery Co.,* 439 U.S. at 331, 99 S.Ct. 645 (other citation omitted)).

The focus at Mrs. Newell's workers' compensation proceeding, which was defended by the D.C. Public Schools and their General Counsel, was on "whether [she] sustained any disability as a result of [her] injury at work." DOES determined that "[Mrs. Newell] was disabled from February 14, 1989 through June 15, 1989, as a result of her fall at work. She is, therefore, entitled to disability benefits and payment of all medical bills related to that fall." DOES concluded, aided by the presumption of compensability which governs workers' compensation actions, see D.C.Code § 36–321(1) (1997), that Mrs. Newell was entitled to disability benefits because her injury "arose out of and in the course of her employment"—that is, her injury occurred in the performance of her duties and thus was "related to the fall at work." We need not decide whether the issue raised at the workers' compensation proceeding was the same as the proximate cause issue presented in the Newells' tort

action. Potential unfairness to the District may have resulted from an application of the doctrine of offensive collateral estoppel in favor of the Newells not only because Mrs. Newell's three-month disability claim was not defended by the District's office of the chief legal counsel, the Corporation Counsel, but also because the interests in defending against a three-month disability claim are not the same as those in this tort action where the demand for damages ranged from $500,000 to $872,000. Indeed, during the proceedings on Mrs. Newell's disability claim, the D.C. Public Schools, unlike the District in the tort case before us, presented no expert testimony on the issue of proximate cause. Thus, the District may not have had a full and fair opportunity to litigate the proximate cause issue during the disability proceeding. On the record before us, then, we cannot conclude that the trial court abused its discretion by refusing to give preclusive effect to the DOES decision, or that the trial court erred by denying the Newells' partial summary judgment motion.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.[6]

*So ordered.*

---

**6.** Given our disposition, it is unnecessary to consider the Newells' argument pertaining to the trial court's ruling on damages.