**HOWARD UNIVERSITY, Appellant,**

v.

**Harold E. LACY, Jr., Appellee.**

Nos. 02–CV–464, 02–CV–554.

District of Columbia Court of Appeals.

Argued June 25, 2003.
Decided July 17, 2003.

Daniel I. Prywes, Washington, DC, for appellant.

David W. Brown for appellee.

Before SCHWELB, FARRELL, and WASHINGTON, Associate Judges.

SCHWELB, J.

This is an appeal by Howard University from a judgment in favor of Harold E. Lacy, Jr., for breach of an alleged contract of employment. Lacy was discharged following an incident on April 6, 1996, in which he allegedly placed a student in an illegal chokehold.

The alleged contract on which Lacy's case is based was the 1980 edition of the Howard University Employee (Non–Faculty) Handbook. The Handbook provides in substance that although temporary or probationary employees may be terminated at any time, regular employees may be discharged only for unsatisfactory work performance, neglect of duty, or conduct incompatible with the welfare of the University. The Handbook also sets forth specific disciplinary and grievance procedures. At the same time, it is stated on the first page of the Handbook that "[t]his document is not to be construed as a contract." In the Handbook, the University also reserves to itself the exclusive discretion to exercise traditional management prerogatives, which include the sole authority to "select, hire, promote, demote, suspend [and] *terminate* . . . employees."[1] (Emphasis added.)

The case was tried in two parts before two different judges and two different juries. In October 2001, in a trial over which Judge Susan R. Winfield presided, the jury found that the University had discharged Lacy without good cause, in breach of the alleged employment contract. The jurors were, however, unable to agree on the issue of damages. A second trial, limited to damages alone, was held in April 2002, with Judge Mary Ellen Abrecht presiding. The jury at the second trial returned a verdict in Lacy's favor in the total amount of $265,000. Judge Abrecht entered judgment in conformity with the verdict.

On appeal, Howard University contends, *inter alia,* that Judge Winfield erred by ruling as a matter of law that the Handbook constituted an enforceable contract and by precluding the University from arguing the contrary to the jury.[2] We agree with the University on the issue of liability.

The University also claims that Judge Abrecht committed reversible error with respect to the award of damages. We conditionally sustain the awards of $121,000 for front pay and $120,000 for back pay,[3] but vacate as unduly remote and speculative the award of $24,000 in tuition remission.

**I.**

Following Lacy's institution of this action, the University filed a motion for summary judgment. The University contended, as a matter of law, that in light of (1) the statement in the Handbook that the document is not a contract, and (2) the University's retention in the Handbook of the authority to terminate employees, the Handbook did not constitute an enforceable employment contract. Consistently with authorities holding that, in similar

---

1. The relevant provisions of the Handbook are quoted in detail in *United States ex rel. Yesudian v. Howard Univ.,* 332 U.S.App. D.C. 56, 72–73, 153 F.3d 731, 747–48 (1998).

2. Lacy cross-appealed, contending that he should not be required to mitigate his damages if (as he alleged) the University acted with malice, and that Judge Abrecht erred in ruling to the contrary. In light of our disposi-

tion of the issue of damages as well as representations made by Lacy's counsel in his brief and at oral argument, we deem the cross-appeal withdrawn.

3. The award of damages is, of course, contingent on a determination at any retrial that the Handbook is an employment contract and that Howard is liable for its breach.

circumstances, the presence of such disclaimers creates an ambiguity but does not conclusively negate the existence of a contract, *see, e.g., Strass v. Kaiser Found. Health Plan of Mid–Atlantic,* 744 A.2d 1000, 1011–14 (D.C.2000); *Yesudian, supra,* note 1, 332 U.S.App. D.C. at 72–73, 153 F.3d at 747–48, Judge Winfield denied the University's motion.

■ In advance of trial, Lacy requested the court to rule that, under the doctrine of offensive collateral estoppel, the University should be precluded from contending that the Handbook did not constitute an enforceable contract. Lacy claimed—inaccurately, as we show at page 5, *infra,* and as his counsel acknowledged at oral argument—that juries in three previous cases, namely *Law v. Howard Univ.,* 558 A.2d 355 (D.C.1989); *Howard Univ. v. Baten,* 632 A.2d 389 (D.C.1993); and *Yesudian,* 332 U.S.App. D.C. at 72–73, 153 F.3d at 747–48, had found the Handbook to be a contract.

We have stated that collateral estoppel, also known as issue preclusion,

> renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) *the issue is actually litigated* and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.

*Davis v. Davis,* 663 A.2d 499, 501 (D.C. 1995) (quoting [*Washington Med. Ctr., Inc. v. Holle,* 573 A.2d 1269, 1283 (D.C. 1990) ] ) (other citations omitted). "Offensive use of collateral estoppel arises when a plaintiff seeks to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Ali Baba Co. v. WILCO, Inc.,* 482 A.2d 418, 421–22 (D.C.1984) (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

*Newell v. District of Columbia,* 741 A.2d 28, 36 (D.C.1999) (emphasis added).

■ For offensive collateral estoppel to be properly invoked, "[t]he issue to be concluded must be the same as that involved in the prior action[, and] *must have been raised and litigated, and actually adjudged.*" *Ali Baba Co.,* 482 A.2d at 421 n. 6 (quoting 1B MOORE'S FEDERAL PRACTICE ¶ 0.443[1] (2d ed.1982)) (emphasis added); *Newell,* 741 A.2d at 36. "We apply the doctrine of offensive collateral estoppel with some caution ... because it presents issues relating to ... potential unfairness to a defendant." *Newell,* 741 A.2d at 36 (internal quotation marks omitted); *Ali Baba Co.,* 482 A.2d at 422. As we stated in *Ali Baba Co.,* 482 A.2d at 422 and reiterated in *Newell,* 741 A.2d at 36, we review the trial court's application of the doctrine of offensive collateral estoppel for abuse of discretion.

Lacy's attempt to invoke offensive collateral estoppel was based on an erroneous premise. An examination of the opinions in *Law* and in *Baten* reveals that the question whether the Handbook constituted a contract was not contested or *"actually litigated,"* *Newell,* 741 A.2d at 36, in either case. At oral argument before this court, counsel for Lacy acknowledged this to be true. Nevertheless, the trial court, explicitly treating as correct Lacy's claim that three juries had decided the issue against the University, sustained the application of the doctrine of offensive collateral estoppel. We cannot agree with this ruling.

■ The exercise of discretion must be based on a firm factual foundation, and the court abuses its discretion if the stated reasons for its actions do not rest upon a

sufficient factual predicate. *See In re J.D.C.*, 594 A.2d 70, 75 (D.C.1991); *Johnson v. United States*, 398 A.2d 354, 364 (D.C.1979). In this case, contrary to the plaintiff's representation and the trial court's assumption, there was only a single contested jury determination—that in *Yesudian*—that the Handbook constituted a contract between the employer and an employee.[4] Given the restraint with which offensive collateral estoppel should be invoked, *Newell,* 741 A.2d at 36, we do not think that a single verdict in a markedly different case[5] supports issue preclusion in Lacy's favor here.

 This court has repeatedly held, and indeed it is undisputed in this case, the *Roberts* footnote (favoring the University) to the contrary notwithstanding, that the Handbook is ambiguous with respect to the critical question whether the parties have entered into an employment contact. *See, e.g., Yesudian,* 332 U.S.App. D.C. at 72–73, 153 F.3d at 747–48; *Dantley,* 801 A.2d at 964–65. Where an ambiguity is present, the intent and understanding of the parties is of critical importance. "Extrinsic evidence of the parties' subjective intent may be resorted to ... if the document is ambiguous." *1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.,* 485 A.2d 199, 205 (D.C.1984). "In order to

form a binding agreement, both parties must have the distinct intention to be bound; without such intent, there can be no assent and therefore no contract." *Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 547 (D.C.1981). Further, in determining whether the parties entered into a contract, the intent of each party must be "closely examined." *Jack Baker, Inc. v. Office Space Dev. Corp.,* 664 A.2d 1236, 1239 (D.C.1995). That "close[] examin[ation]" surely requires a probing inquiry into the understanding of each party to the alleged contract regarding its meaning and effect. This inquiry is not to be foreclosed by a jury verdict in a single and, in our view, quite distinguishable case. We are therefore unable to agree with the trial court's initial disposition of Lacy's claim of offensive collateral estoppel.

## II.

Following Judge Winfield's initial ruling, the University filed a motion for reconsideration. The judge denied the motion, but she apparently revised, in part, the grounds for her decision:

Defendant cites *Newell* for the proposition that offensive collateral estoppel only applies when the same factual issues are presented in subsequent cases.

---

4. In *Yesudian,* the University admitted in its answer that the Handbook constituted a contract. 332 U.S.App. D.C. at 73, 153 F.3d at 748. Nevertheless, the University contested the issue at trial, and the plaintiff did not object.

5. *E.g.,* the plaintiff in *Yesudian* was a lower level employee, not involved in management, who claimed that he was discharged for whistleblowing. Lacy, on the other hand, held supervisory responsibilities, including the authority to discharge lower level employees, and he might well have had a completely different understanding of the meaning of the concededly ambiguous and self-contradictory Handbook.

We also note that in *Roberts v. Howard Univ.,* 740 A.2d 16 (D.C.1999), a division of this court unanimously stated: "The employee handbook clearly states that it is not an employment contract. *That ends the matter.*" *Id.* at 19 n. 1 (emphasis added). Subsequently, in *Dantley v. Howard Univ.,* 801 A.2d 962, 964–67 (D.C.2002), another division of the court declined to follow the *Roberts* footnote, apparently viewing it as dictum (although it could also reasonably be regarded as an alternative holding). In our view, the varying approaches of these and other cases decided by this court counsel against the application of offensive collateral estoppel in this case.

Defendant claims that the intent of the parties to form a contract is factually relevant to each case. Defendant misunderstands the application of offensive collateral estoppel. Under defendant's argument, offensive collateral estoppel would never be allowed because each new plaintiff would present new issues of intent. *But where the contract here is unambiguous, intent of the parties is not an issue.* Offensive collateral estoppel prevents unnecessary relitigation of the issue.

(Emphasis added.)

The precise meaning of the italicized phrase is unclear. The judge obviously did not mean, and could not have meant, that a Handbook containing an explicit statement that it is *not* a contract is nevertheless, unambiguously, an enforceable employment contract. Indeed, the authorities on which the judge relied, including *Yesudian,* explicitly hold that the Handbook is ambiguous, and not unambiguous, with respect to whether or not the Handbook imposes a contractual obligation on the University. Further, as we have noted at page 6, the existence of ambiguity renders inquiry into the intent of the parties indispensable.

Notwithstanding these considerations, the case went to trial, and the judge effectively instructed the jury that the Handbook was an enforceable contract. The judge also barred the University from arguing the contrary to the jury. The first jury, as we have noted, found the University liable to Lacy, but was unable to agree on damages.[6]

 The first jury's finding in favor of Lacy on the issue of liability was predicated on what we view as an inappropriate application by the trial court of the doctrine of offensive collateral estoppel. In addition, the judge apparently concluded that the intent of the parties was irrelevant to the question whether the Handbook constituted a contract. In light of what we regard as these incorrect legal rulings, we are compelled to set aside the verdict as to liability.[7] Accordingly, the

---

6. In the second trial before Judge Abrecht, a different jury returned a verdict in Lacy's favor in the amount of $265,000.

7. Lacy contends that the University has failed to preserve for appeal the claim that the intent of the parties, and Lacy's individual circumstances and understanding, affect the proper interpretation of the Handbook and the outcome of this case. In its motion for summary judgment, the University contended:

> Because employees may develop a legitimate expectation that the provisions of an employment manual will be followed, most jurisdiction[s], including the District of Columbia, have recognized that under certain circumstances, the provisions of an employment handbook may constitute an implicit contractual limitation upon an employer's otherwise unfettered right to terminate its employees.
>
> Before such a limitation will be implied, however, it has been required that an employee demonstrate that all of the elements of a unilateral contract are present, or that

the employer is otherwise estopped to deny the promises set forth in the manual. To recover under either theory, *an employee must demonstrate that the employer made a promise concerning the time or manner in which the employment could be terminated and that the promise is enforceable because the employee gave consideration or otherwise reasonably relied upon the promise to his detriment. Plaintiff must adduce evidence of such reliance.*

(Emphasis added; footnotes omitted.) In our view, this passage in the University's submission, was sufficient to preserve the issue. "[O]nce a ... claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. Escondido,* 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (citations omitted); *Mills v. Cooter,* 647 A.2d 1118, 1123 n. 12 (D.C.1994) (citing *Yee* ).

judgment is reversed, and the case is remanded to the trial court for a new trial with respect to liability and for further proceedings consistent with this opinion.[8]

*So ordered.*[9]

Sylvia J. ROLINSKI, Appellant,

v.

Michael J. LEWIS, Appellee.

No. 01–CV–773.

District of Columbia Court of Appeals.

Reargued en banc May 12, 2003.

Decided July 17, 2003.

---

8. On the question of damages, we reject the University's contention that the awards for front pay ($121,000) and back pay ($120,000) were excessive. "What is a reasonable effort [to mitigate damages] is a question of fact." *West v. Whitney–Fidalgo Seafoods, Inc.,* 628 P.2d 10, 18 (Alaska 1981); *Bill C. Harris Constr. Co. v. Powers,* 262 Ark. 96, 554 S.W.2d 332, 336 (1977). "The burden of showing mitigation of damages is on the party raising the issue." *Mark Keshishian & Sons, Inc. v. Washington Square, Inc.,* 414 A.2d 834, 842 n. 19 (D.C.1980).

In this case, the jury could reasonably find that Lacy's efforts to mitigate his damages, both before and after the jury verdict in his favor, were reasonable, and that Lacy was not required to "moonlight." The judge at the second trial did not err in submitting the issue of reasonableness to the jury. *See, e.g., Brady v. Thurston Motor Lines, Inc.,* 753 F.2d 1269, 1275 (4th Cir.1985); William H. Danne, Jr., Annotation, *Nature of Alternative Employment Which Employee Must Accept to Minimize Damages for Wrongful Discharge,* 44 A.L.R.3d 629 (1972 & Supp.2003).

We conclude, however, that the award of $25,000 in tuition remission must be set aside as speculative. *See, e.g., Pratt v. Univ. of the District of Columbia,* 691 A.2d 158, 159 (D.C. 1997). This award is predicated upon the questionable assumptions that Lacy's daughter, seven years old at the time of trial, would select Howard University (rather than any of the three other colleges mentioned by her) eleven years later, and that Lacy would remain at the University for eleven (or, counting four years of college, even fifteen) more years when he had been disciplined for a serious infraction before the "chokehold" incident that precipitated this case, and when Lacy had a poor relationship with several superiors and co-workers at the University. As in *Green*

*v. Lafoon,* 173 A.2d 212, 213 & n. 1 (D.C. 1961), "it is impossible to say with any assurance that such [future] damages are reasonably or probably certain to follow." *Accord, Am. Marietta Co. v. Griffin,* 203 A.2d 710, 712 (D.C.1964).

9. The new trial must be limited to the issue of liability because the second jury decided the issue of damages and because we have reviewed Judge Abrecht's approval of the second jury's award and have affirmed it in part and reversed it in part. See note 8, *supra.* Indeed, the second jury's disposition of the issue of damages, as modified by this court, is at least arguably *res judicata* for purposes of any retrial. *See Newell,* 741 A.2d at 36 (explaining doctrine of *res judicata* ).

Rule 59 (a) of the Superior Court's Rules of Civil Procedure authorizes the court to order a new trial on "all or part of the issues." By remanding the case to the trial court for a new trial as to liability only, we are directing that court to try the sole issue in the case that remains undecided following our disposition of the present appeal. Moreover, this is not a case in which the issues of liability and damages are so "intertwined," *cf. Anthony v. Allstate Ins. Co.,* 790 A.2d 535, 538 (D.C.2002), that the jury on remand could not fairly evaluate liability without also considering damages. Indeed, the second jury already considered damages alone after the question of liability had already been resolved, and it would be incompatible with "good judicial husbandry," *In re Melton,* 597 A.2d 892, 908 (D.C.1991) (en banc) (citation omitted), for this court now to require a third jury to reconsider an issue which a second jury has already decided and which this court has now addressed on the merits and conditionally affirmed in part and vacated in part.