PER CURIAM:
Appellant, K.H. (Mr. H.), appeals from an order of the trial court in a domestic relations proceeding denying his complaint for custody of G.H., the child of his former wife, R.H. (Mrs. H.). Preliminarily, we conclude that the trial court exceeded its authority in disposing of this custody dispute between a non-parent and a parent in the context of a domestic relations proceeding. We reverse and remand the case for further proceedings, consistent with this opinion, under the applicable neglect statutes and, if appropriate, the Foster Children’s Guardianship Act, D.C.Code §§ 16-2381 et seq. (2007 Supp.) (Permanent Guardianship Act) (providing for creation of permanent guardianships).
I. Procedural and Factual Background
Mr. H. and Mrs. H. were divorced on April 23, 1996. Under the terms of their divorce decree, Mrs. H. was granted custody of their minor children, K.H., Jr. and S.H., and Mr. H. was granted reasonable *330 visitation rights.[1] G.H., the child involved in the present proceeding, is R.H.’s child who was born while Mr. H. and Mrs. H. were married to each other, but physically separated for an extended period of time. It is undisputed that Mr. H. is not G.H.’s biological father.[2] Although Mr. H. treated G.H. as his own child, he did not seek to adopt him while the parties were married.
A neglect proceeding was instituted against Mrs. H. and the man with whom she resided, H.C., when it was reported that H.C. had kicked S.H. and pulled out some of her hair while dragging her by her braids in an effort to get her to attend tutoring.[3] After a hearing, the court found that all three children had been abused by H.C. and that Mrs. H. had done little to protect them and agreed with the corporal punishment that H.C. administered. As a result, the court found that S.H. was neglected under D.C.Code § 16 — 2301(9)(A) (a child abused by a parent or other custodian) and (9)(C) (a child whose parent is unable to discharge his or her responsibilities because of mental incapacity) and that K.H., Jr. and G.H. were neglected under D.C.Code § 16-2301(9)(C) and (9)(E) (a child “who is in imminent danger of being abused and whose sibling has been abused”).[4] The court entered a disposition order placing all three children in the custody of Mr. H.[5]
Although Mrs. H. did not appeal, H.C. noted an appeal which was decided by this court in In re G.H., 797 A.2d 679 (D.C.2002).[6] In G.H., this court held that the evidence was sufficient to support the trial court’s factual findings that H.C. had abused S.H. by subjecting her to excessive physical discipline, but insufficient to support a finding that his conduct placed G.H. and K.H. in imminent danger of abuse. Id. at 686. However, the court left undisturbed the disposition order placing the children with Mr. H., concluding that Mrs. H. had waived her legal right to have the order altered by fading to note an appeal. Id.
Subsequently, Mr. H. filed in the domestic relations proceeding a complaint for custody of G.H, which the trial court denied.[7] Although concluding that there was *331 some uncertainty about the standing of a non-parent to seek custody of a child in the context presented, the court assumed Mr. H.’s standing to bring the action as the actual custodian pursuant to a placement by order of the neglect court. The court stated that it viewed Mr. H. like any non-parent seeking custody of a minor child from a biological parent. In denying the custody complaint, the trial court acknowledged the finality of the neglect findings with respect to Mrs. H., since she did not appeal, but accorded them little, if any, weight in light of the Court of Appeals’ “affirmative statement” that there was insufficient evidence to support a finding of neglect of G.H. by his mother. The court found that Mrs. H. was a fit parent and that maintaining G.H.’s continued separation from her was not in his best interest. Having considered the child’s need for continuity of care, the physical, mental and emotional health of all persons involved, the quality and interaction and interrelationship of the child to his mother and Mr. H., and other factors impacting on Mrs. H.’s fitness and the child’s best interests, the trial court concluded that Mr. H. had not satisfied his burden of overcoming the preference/presumption that the child be in the custody of his natural parent.
II.
Mr. H. argues that the trial court abused its discretion by failing to give preclusive effect to the neglect finding in the prior proceeding and by requiring him to introduce independent evidence that Mrs. H. was an unfit mother. He contends that the doctrine of collateral estop-pel precluded the trial court from revisiting the neglect finding, thereby resulting in the loss of the presumption favoring the award of custody to Mrs. H. as the child’s natural parent. He argues that these circumstances required him to meet his burden of proof by a preponderance of the evidence, rather than by the “clear and convincing” evidence standard applied by the court. Mrs. H. challenges the applicability of the use of collateral estoppel on this record and supports the trial court’s factual findings and conclusions of law. However, she argues that District of Columbia law does not provide a private right of action for a non-parent to seek custody of a child from a parent. We consider first Mrs. H.’s challenge to Mr. H.’s right to bring the domestic relations action for custody.
A. Jurisdiction/Standing Issues
Mrs. H. argues that District of Columbia law does not provide a private right of action for a non-parent to sue a parent for custody of the latter’s child outside the context of an adoption or neglect proceeding. She contends that private actions cannot be used to circumvent the existing statutory scheme governing adoption and neglect proceedings. In response, Mr. H. argues that the court’s authority to award custody of a child stems from equity, rather than any particular statute. He contends that there is no law limiting the court’s equitable authority to entertain such actions and that this court has recognized the ability of third-party caregivers to obtain custody of children in their care.
The arguments that Mr. H. makes were resolved against him in W.D. v. C.S.M., 906 A.2d 317 (D.C.2006). In W.D., this court considered “whether the trial court had authority to grant permanent custody of a minor child, who was under the court’s jurisdiction in a neglect case, to third par *332 ties in a proceeding filed by them under Chapter 9 (‘Divorce, Annulment, Separation, Support, etc.’) of the domestic relations law.” Id. at 321. After considering the statutory scheme, this court concluded that
there is no reason to believe that the legislature intended to extend the reach of the court’s domestic relations jurisdiction and its standards and procedures into an area where it had provided for extensive procedures specifically designed to protect abused and neglected children. The court’s general powers to adjudicate matters involving children under other sections of the Code ... do not support [the] argument that these provisions were intended to be used, or can be used, as a vehicle to bypass the operation of the neglect statutes. The statutory procedures governing abused and neglected children are comprehensive and extensive.... The question is whether the legislature has sought to limit the court’s inherent authority.... In this area, we conclude that the legislature has preempted the power of the court to exercise its inherent authority to override the procedures established for determining the future of abused and neglected children.
906 A.2d at 325 (citations and footnotes omitted). See also T.S. v. M.C.S., 747 A.2d 159, 163-64 (D.C.2000) (holding that the domestic relations court could not remove children from their mother’s custody without instituting neglect proceedings).
When a child is adjudicated neglected, the court is authorized by statute to place the child with someone other than a parent, if in the child’s best interest. See D.C.Code § 16-2320(a)(3)(C), (a)(5) (2001) (authorizing, respectively, placement of a neglected child with “a relative or other individual who is found by the Division to be qualified to receive and care for the child,” or “such other disposition as is not prohibited by law and as the Division deems to be in the best interests of the child”). The Foster Children’s Guardianship Act, codified at D.C.Code § 16-2381 et seq. (2003 Supp.), provides for the creation of a “permanent guardianship” and the appointment of a non-parent where: “(1) [t]he permanent guardianship is in the child’s best interests; (2) [a]doption, termination of parental rights, or return to parent is not appropriate for the child; and (3) [t]he proposed permanent guardian is suitable and able to provide a safe and permanent home for the child.” See D.C.Code § 16-2383(c)(l)-(3) (2007 Supp.).[8] However, a permanent guardianship may be ordered only where there is a prior adjudication that the child is neglected. See D.C.Code § 16-2383(a) (2007 Supp.) (“A guardianship order may not be entered unless the child has been adjudicated to be neglected pursuant to section 16-2317 and has been living with the proposed permanent guardian for at least 6 months.”). “Thus, the [Permanent Guardianship] Act provides this additional option to the Family Court by which it can achieve permanency for the neglected child while ensuring the fundamental rights of all parties.” W.D., supra, 906 A.2d at 326 (citation and footnote omitted).
The trial court recognized the court’s authority to appoint a permanent guardian *333 for the child under this act, but declined to apply it, noting this court’s decision in G.H., supra, in which it stated that the evidence was insufficient to support a finding that G.H. had been neglected. See G.H., 797 A.2d at 686. Thus, the trial court failed to give preclusive effect to the trial court’s decision adjudicating G.H. to be a neglected child even though the judgment was final as to Mrs. H., who failed to appeal the decision. Since the child’s status as a neglected child or not is determinative of the options available to the court’s further action, we consider Mr. H.’s argument that the trial court abused its discretion by failing to give preclusive effect to the neglect finding in the neglect case.
B. Preclusive Effect of the Prior Neglect Finding
Mr. H. argues that the doctrine of collateral estoppel precluded the trial court from reconsidering the prior neglect finding. Mrs. H. contends that offensive collateral estoppel is a discretionary device and that since certain prerequisites to its applicability are not met here, the trial court was not bound to apply it.
(I) Applicable Legal Principles
This court has stated that:
Collateral estoppel or issue preclusion, “renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.”
Newell v. District of Columbia, 741 A.2d 28, 36 (D.C.1999) (quoting Davis v. Davis, 663 A.2d 499, 501 (D.C.1995) (quoting in turn Washington Med. Ctr. v. Holle, 573 A.2d 1269, 1283 (D.C.1990))); Modiri v. 1342 Restaurant Group, Inc., 904 A.2d 391, 394 (D.C.2006). The court also recognizes the doctrine of offensive collateral estoppel, which may be used where a plaintiff seeks to estop a defendant from relitigating issues which the defendant previously litigated and lost against another plaintiff. See Newell, 741 A.2d at 36 (citing Ali Baba Co. v. WILCO, Inc., 482 A.2d 418, 421-22 (D.C.1984) (citing in turn Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979))). To invoke offensive collateral es-toppel, the parties need not be identical, i. e., mutuality is not required. See Ali Baba, 482 A.2d at 421 n. 7 (citations omitted). Rather, the party invoking the doctrine must demonstrate that:
The issue to be concluded must be the same as that involved in the prior action. In the prior action, the issue must have been raised and litigated, and actually adjudged. The issue must have been material and relevant to the disposition of the prior action. The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.
See id. at 421 n. 6 (quoting IB MooRe’s Federal Practice ¶ 0.443[1] (2d ed. 1982)). This court, while permitting nonmutual collateral estoppel, has noted that it applies the doctrine “with some caution ... because it ‘presents issues relating to the potential unfairness to a defendant.’ ” Newell, 741 A.2d at 36 (quoting Ali Baba, 482 A.2d at 422). Thus, following the lead of the Supreme Court, this court “ ‘grant[s] trial courts broad discretion to determine when [the doctrine] should be applied,’ ” see Ali Baba, 482 A.2d at 422 (quoting Parklane Hosiery, supra, 439 U.S. at 329, 99 S.Ct. 645), and has recognized various factors for consideration in *334 determining whether it would be fair to apply the doctrine and whether the defendant had a full opportunity to litigate the issue. See Ali Baba, 482 A.2d at 423. These factors include:
(1) whether the first suit was for a trivial amount while the second was for a large amount;
(2) whether the party asserting the es-toppel could have effected joinder between himself and his present adversary, but did not do so;
(3) whether the estoppel is based on one of conflicting judgments, another of which is in defendant’s favor;
(4) whether there are significantly different procedural advantages available to the defendant in the second suit which could affect the outcome.
Id. (citing IB MOORE’S FEDERAL PRACTICE ¶ 0.441 [3.-4] (2d ed. 1982) (other citation omitted)). Moore’s Federal Praotioe lists several additional factors, including:
(1) whether application of the doctrine would be unfair to the defendant under the circumstances;
(2) whether the defendant had a full and fair opportunity to litigate;
(3) whether the defendant had the incentive to defend vigorously in the first suit;
(4) whether the defendant had the ability to foresee additional litigation.
18 Moore’s Federal Praotioe § 132.04[2][c] (3d ed. 2007). The Restatement (Seoond) op Judgments, which Ali Baba cites with favor, see 482 A.2d at 423 n. 14, lists additional factors, including whether:
(1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;
(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;
(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;
(7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;
(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.
Restatement (Second) of Judgments, § 29 (1982). This court reviews the trial court’s discretionary decisions for an abuse of discretion. See Howard Univ. v. Lacy, 828 A.2d 733, 736 (D.C.2003), reh’g granted on other grounds, 833 A.2d 991 (D.C.2003).
(ii) Disposition
The basic prerequisites to application of the doctrine of collateral estoppel are met in this case. Specifically, there is a final judgment on the merits, an identity of the issues sought to be precluded (i.e., the neglect determination). Mrs. H., the party to be estopped, was a party to the prior action, and the determination was essential to the judgment. See Newell, supra, 741 A.2d at 36. A final disposition order was entered removing G.H. from her custody based upon the adjudication that he was neglected. While this court in G.H., supra, expressed the view that the evidence was “insufficient to support the finding that H.C.’s conduct placed G.H. and K.H. in imminent danger of being abused,” it left undisturbed the trial court’s disposition order because Mrs. H. did not appeal. 797 A.2d at 686. To *335 obtain relief from a trial court’s judgment, a party must either present it “to the tribunal itself or authority superior to it.” Democratic State Comm. of the District of Columbia v. Bebchick, 706 A.2d 569, 574 (D.C.1998). Mrs. H. did not do so. Where a party fails to do so, that judgment stands as final with respect to that party. “The mere fact that a judgment is erroneous does not deprive it of finality or conclusiveness; until vacated or reversed the judgment is regarded as conclusive.” See 46 AmJur. Judgments § 498 (1994); accord, Kiker v. Hefner, 409 F.2d 1067, 1068 (5th Cir.1969).
Here, the trial court did not give preclusive effect to the neglect finding. It applied an incorrect legal standard in deciding not to give preclusive effect to the prior neglect adjudication. Thus, it did not consider the multiple factors relevant to the exercise of its discretion in determining whether to apply the doctrine of offensive collateral estoppel or not. Ordinarily, we will remand a case for the proper exercise of the trial court’s discretion based on the relevant factors. Coulibaly v. Malaquias, 728 A.2d 595, 605 (D.C.1999). However, if we can discern from the record only one permissible option, a remand is unnecessary. See id.; see also Johnson v. Payless Shoe Source, Inc., 841 A.2d 1249, 1257 (D.C.2004) (citing Wright v. United States, 508 A.2d 915, 920 (D.C.1986)).
This appears to be a case where the only option was to give preclusive effect to the prior neglect adjudication, considering the relevant factors as established by the record. First, the neglect litigation was certainly not “trivial.” “The right of a parent to raise his or her child ... has been characterized as ‘essential’ and as ‘far more precious than property rights.’ ” In re Ko.W., 774 A.2d 296, 308-304 (D.C.2001) (quoting Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). Thus, there was every incentive for Mrs. H. to defend her position vigorously in the first action. Second, Mr. H. could not have had an opportunity to litigate the neglect issue in the first action. Although a neglect rule allows caretakers to become parties to a neglect proceeding, this rule applies only to those who have had the child in the home for twelve months. See Super. Ct. Neg. R. 9(b) (2004). At the time of the neglect adjudication, G.H. had not been with Mr. H. for that period. Third, the estoppel asserted here is not based on conflicting judgments. While Mrs. H. contends that there is an inconsistency with the appellate decision in G.H., supra, that decision is not determinative as to Mrs. H. Since Mrs. H. did not appeal, the appellate decision in G.H. did nothing to alter the neglect finding as to her. Fourth, there are no procedural advantages in the second custody action which outweigh those in the neglect proceeding. Indeed, the opposite may be said to be true, since neglect proceedings afford significantly more procedural advantages than a custody proceeding in the domestic relations context. See, e.g., T.S., supra, 747 A.2d at 164-65 (noting that the “procedural safeguards” in the neglect code “are detailed and substantial” as compared to those in a divorce/custody context). Therefore, this factor does not weigh toward barring the use of estoppel here. Fifth, Mrs. H. had a full and fair opportunity to litigate the issue in the neglect action, and therefore, this factor is not an impediment to preclusion. Sixth, Mrs. H. had a strong incentive to defend vigorously in the first action. Seventh, treating the issue as conclusively determined would not be incompatible with administering “the remedies” inherent in the neglect context. Indeed, as Mr. H. argues, the opposite conclusion should be reached. If preclu-sive effect is not given to the neglect finding, parties could lose the incentive to appeal, relying instead on the ability to *336 attack the judgment collaterally in a later proceeding and- creating uncertainty for the finality of neglect determinations. Eighth, the relationships among the parties have not changed since the first litigation. Therefore, this factor will not weigh as a bar to the application of estoppel. Ninth, whether treating the issue as conclusively determined might complicate the issues in the subsequent action or prejudice the interest of other parties, according to the Restatement, is a rule primarily directed toward protecting parties who have not yet had their “day in court.” See Restatement (Second) of Judgments, § 29, cmt. h. . Here, Mrs. H. had her “day in court” in the neglect proceeding, and therefore, this factor will not weigh toward barring preclusion. Tenth, this is not a case where the neglect issue is a pure question of law and treating it as conclusively determined would inappropriately foreclose the opportunity for obtaining reconsideration of the legal rule upon which it is based. Neither in the first action nor the prior action was Mrs. H. denied the opportunity to raise issues of law on this point. Moreover, it is Mrs. H.’s failure to appeal in the neglect proceeding, rather than the action of any party that forecloses her challenge to the neglect finding. For these reasons, this particular factor is not applicable here to weigh toward barring the preclusive effect of the neglect finding. Eleventh, the court may consider whether the party to be precluded had the ability to foresee additional litigation on the point. Here, Mrs. H. had to know that additional court action related to her children would follow and did. While she might not have known that Mr. H. would seek custody of G.H. by commencing this particular action, she knew that further court proceedings would follow so long as the neglect determination was not challenged, including the possibility that the court would place her child outside her home. Therefore, this factor also weighs in favor of according preclusive effect to the judgment. Finally, there appear to be no other compelling circumstances that make it appropriate to allow re-litigation of the valid, final judgment in the neglect case. For all of these reasons, we conclude that the trial court had no other option but to give preclusive effect to the neglect judgment.
Therefore, a remand is necessary to allow the trial court to determine the appropriate disposition of the case under the neglect statutory scheme, including proceedings under the Permanent Guardianship Act.[9] As Mr. H. argues, since the neglect adjudication must be given preclu-sive effect, he will be held to the preponderance of the evidence burden, rather than a clear and convincing evidence standard in determining placement of the child under the neglect statutes or guardianship proceedings.
For the foregoing reasons, the case is reversed and remanded for further proceedings consistent with this opinion.

So ordered.

. K.H. and R.H. had entered a voluntary separation agreement specifying in detail custody and visitation arrangements concerning K.H., Jr. and S.H. The agreement was approved by the court, incorporated, and merged into the divorce judgment.

. G.H.'s father is H.A., who did not appear in this proceeding, and who has apparently never sought an active role in G.H.'s life. No mention is made of G.H. in the separation agreement or the divorce judgment.

. H.C. is variously referred to in the record as Mrs. H’s “paramour,” "boyfriend” "fiancé” and "common law husband.” Mrs. H. and H.C. had been together for several years and referred to each other as husband and wife.

. D.C.Code §§ 16-2301(9)(A), (9)(C), and 9(E) have been recodified, respectively, as D.C.Code § 16 — 2301 (9)(A)(i), (iii), and (v) (2002).

. The children had been placed with their paternal grandmother initially and subsequently with Mr. H.

. Although H.C. had no biological relationship to the children, the court held that he had a reputational interest in the neglect determination, which gave him standing to appeal. See G.H., supra, 797 A.2d at 683.

. Mr. H. had previously filed a motion to modify custody of K.H. and S.H. in the domestic relations proceeding. The court noted its authority to modify custody arrangements agreed upon by the parties or ordered by the court. See Spires v. Spires, 743 A.2d 186, 190 (D.C.1999) (noting the court’s authority to modify custody if in the best interests of the children). It found "[t]he finding of neglect and abuse by Ms. [H] ... [to be] a substantial and material change in circumstances since the prior custodial arrangement.” After hearings on the motion, the trial court granted the *331 motion and placed primary physical custody of these children with Mr. H., while providing for joint legal custody with Mrs. H.

. Mr. H. argues that he could not have applied for permanent guardianship because the statute had not been enacted at the time he filed his complaint for custody. However, the statute was then in effect, having been enacted as emergency legislation on December 18, 2000 (D.C. Law 13-490, 48 D.C.Reg. 63), renewed on February 13, 2001 (D.C. Act 14-4, 48 D.C.Reg. 2254), passed as temporary legislation on March 31, 2001 (D.C. Law 13-208, 48 D.C.Reg. 3239) and effective in final form on April 4, 2001 as D.C.Code §§ 16-2381 to-2399 (D.C. Law 13-273, 48 D.C.Reg. 1637).

. Mr. H. also argues that the trial court abused its discretion in denying his request for a mental health evaluation of Mrs. H. He contends that the failure to grant his motion deprived him of crucial evidence on a disputed issue. Mrs. H. responded that based on the testimony of other witnesses, including the guardian ad litem, the court properly determined that she did not have a mental condition that would preclude custody. Where a child is adjudicated neglected under D.C.Code § 16 — 2301 (9)(A)(iii), the court "may ... for good cause shown,” grant the motion. This indicates that even if the adjudication of neglect puts the parent’s mental state at issue, the decision to order a mental evaluation is still left to the discretion of the trial court and is not compulsory. On this record, we find no abuse of discretion in the trial court’s ruling.