In re Jinhee Kim WILDE, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 436659).

No. 10–BG–1351.

District of Columbia Court of Appeals.

Argued April 19, 2012.*
Decided June 20, 2013.

* Supplemental briefing was completed on November 21, 2012.

Kevin B. Bedell, for respondent.

Julia L. Porter, Senior Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton, Senior Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, with whom Benjamin M. Lee, Assistant Executive Attorney, was on the brief, for the Board on Professional Responsibility.

Before GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

This case of first impression raises the question whether a criminal conviction entered in a foreign country is a "conviction of [a] crime" within the meaning of D.C. Bar R. XI, § 10, and can be the basis for imposing the mandatory disbarment provisions of D.C.Code § 11–2503(a) (2001) for conviction of a crime of moral turpitude. We agree with the unanimous recommendation of the Board on Professional Responsibility ("the Board") that the conviction of a member of the District of Columbia Bar in a court of a foreign country is not a conviction of a crime within the meaning of the aforementioned rule and statute. Accordingly, a conviction in a court of a foreign country, unlike a conviction in a court of this country, is not automatically given conclusive effect for purposes of suspension or disbarment pursuant to D.C.Code § 11–2503(a) and D.C. Bar R. XI, § 10. We also recognize, however, that Bar Counsel can initiate original proceedings against an attorney pursuant to D.C. Bar R. XI, § 8, based upon alleged criminal conduct in a foreign country. The prospect of such a § 8 proceeding raises another issue of first impression, viz., whether in a § 8 proceeding offensive collateral estoppel effect may be given to the conviction of a crime in the court of a foreign country. We conclude that the factual and legal determinations embodied in a foreign conviction [1] may be given conclusive effect in a § 8 proceeding pursuant to principles of collateral estoppel if the Board, in its discretion, determines that Bar Counsel has established that it is fair and reasonable to do so.

## I.

### A. Procedural Background

Bar Counsel notified this court by a letter dated November 2, 2010, that a judgment of conviction had been entered against respondent Jinhee Kim Wilde, a member of the District of Columbia Bar, on August 28, 2009, by the Incheon District Court in Incheon, Republic of Korea (South Korea). The conviction was based on that court's finding that respondent had stolen $1,100 in U.S. currency from another passenger while on a flight from Washington to Incheon, South Korea. Bar Counsel enclosed with its letter a certified copy and a certified English translation of

---

1. While we recognize that the word "foreign," as used in "foreign jurisdiction" or "foreign court," typically refers to any jurisdiction or court outside the District of Columbia, we use "foreign" here to mean those jurisdictions and courts outside of the United States.

the judgment pursuant to D.C. Bar R. XI, § 10, and a proposed order of temporary suspension under § 10(c) for conviction of a "serious crime" as defined by § 10(b).[2]

Respondent promptly filed a formal opposition to the proposed order of temporary suspension, and argued, among other things, that the provisions of D.C. Bar R. XI, § 10, apply only to convictions by courts located in the United States. Bar Counsel contended in reply that D.C. Bar R. XI, § 10, applies to convictions by courts of foreign countries. After considering briefs filed by respondent and Bar Counsel, a motions panel of this court entered our standard order temporarily suspending respondent, and directing the Board to institute formal proceedings to determine the nature of the offense and whether it involved moral turpitude within the meaning of D.C.Code § 11–2503(a).[3]

Bar Counsel recommended to the Board that respondent be disbarred pursuant to § 11–2503(a) on the basis of her conviction in South Korea. Specifically, Bar Counsel recommended that the conviction be treated as a felony because it exposed respondent to a sentence of up to six years of imprisonment, and because it was for theft, an offense that involved moral turpi-

---

**2.** D.C. Bar R. XI, § 10(a), provides:

> *Notification.* If an attorney is found guilty of a crime or pleads guilty or nolo contendere to a criminal charge in a District of Columbia court, the clerk of that court shall, within ten days from the date of such finding or plea, transmit to this Court and to Bar Counsel a certified copy of the court record or docket entry of the finding or plea. Bar Counsel shall forward the certified copy to the Board. Upon learning that the certified copy has not been timely transmitted by the clerk of the court in which the finding or plea was made, or that an attorney has been found guilty of a crime or has pleaded guilty or nolo contendere to a criminal charge *in a court outside the District of Columbia or in any federal court,* Bar Counsel shall promptly obtain a certified copy of the court record or docket entry of the finding or plea and transmit it to this Court and to the Board. The attorney shall also file with this Court and the Board, within ten days from the date of such finding or plea, a certified copy of the court record or docket entry of the finding or plea.
>
> (emphasis added).

D.C. Bar R. XI, § 10(b), provides:

> *Serious Crimes.* The term "serious crime" shall include (1) any felony, and (2) any other crime a necessary element of which, as determined by the statutory or common law definition of such crime, involves improper conduct as an attorney, interference with the administration of justice, false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a "serious crime."

D.C. Bar R. XI, § 10(c), provides:

> *Action by the Court—Serious Crimes.* Upon the filing with this Court of a certified copy of the record or docket entry demonstrating that an attorney has been found guilty of a serious crime or has pleaded guilty or nolo contendere to a charge of serious crime, the Court shall enter an order immediately suspending the attorney, notwithstanding the pendency of an appeal, if any, pending final disposition of a disciplinary proceeding to be commenced promptly by the Board. Upon good cause shown, the Court may set aside such order of suspension when it appears in the interest of justice to do so.

**3.** D.C.Code § 11–2503(a) provides:

> When a member of the bar of the District of Columbia Court of Appeals is convicted of an offense involving moral turpitude, and a certified copy of the conviction is presented to the court, the court shall, pending final determination of an appeal from the conviction, suspend the member of the bar from practice. Upon reversal of the conviction the court may vacate or modify the suspension. If a final judgment of conviction is certified to the court, the name of the member of the bar so convicted shall be struck from the roll of the members of the bar and such person shall thereafter cease to be a member. Upon the granting of a pardon to a member so convicted, the court may vacate or modify the order of disbarment.

tude. Respondent opposed Bar Counsel's recommendation, arguing, *inter alia*, that the actual nature of the offense of which she was convicted was unclear, and that it might have been a misdemeanor attempted theft. Most relevant to framing the issue before us, she contended that there are substantial differences between the legal systems of the United States and South Korea, that the South Korean system lacks safeguards afforded by the Constitution and laws in force in the United States, and that her conviction should not, therefore, be given conclusive effect under D.C. Bar R. XI, § 10.[4]

Prior to the entry of a report and recommendation by the Board, the Circuit Court for Montgomery County, Maryland, held hearings on a disciplinary grievance against respondent, who is also a member of the Maryland Bar. The Maryland Attorney Grievance Commission initiated the proceeding, which the Maryland trial court handled as an original matter.[5]

According to respondent's brief, Bar Counsel for Maryland's Attorney Grievance Commission initially requested that the South Korean conviction be admitted into evidence, but then withdrew that request because it did not meet requirements for admission into evidence. The written ruling of the Maryland court gives no indication that the court gave any weight to the fact that the South Korean court had convicted respondent. The Maryland Circuit Court ruled that Bar Counsel had not established, by clear and convincing evidence, that respondent had stolen monies on the flight from the United States to South Korea. The Maryland court concluded that "Wilde has not violated any of the provisions of the Maryland Rules of Professional Conduct alleged in the petition."

On the basis of the Maryland ruling, respondent moved that this court set aside its order of temporary suspension. Prior to any action by this court on that motion, the Board issued its report recommending that this court "reconsider its order suspending respondent under D.C. Bar R. XI, § 10(c), based on her conviction of a serious crime and referring the conviction to the Board for a moral turpitude determination." It further recommended "that [the court] find that Respondent was not convicted of a crime within the meaning of D.C. Bar R. XI, § 10(a)." The Board noted that, if the court agreed with its recommendation, Bar Counsel would be "free to make an assessment as to whether it wishes to proceed with this case in the ordinary course pursuant to D.C. Bar R. XI, § 8."

In reaching its recommendation, the Board did not proceed, as in the usual case, to determine the nature of the offense for which respondent was convicted in order to ascertain whether it involved a "serious crime" and a "crime of moral turpitude" under the relevant rule and statute. Instead, the Board first took note that its task was complicated by the fact that respondent was tried and convicted in South Korea rather than in the United States, and deemed it necessary to consider at the outset whether it had "jurisdiction under D.C. Bar R. XI, § 10." The Board concluded that the language of D.C. Bar R. XI, § 10(a), which refers to convictions "in a District of Columbia court" or a "court outside the District of Columbia or

---

4. D.C. Bar R. XI, § 10(f), provides:
 *Proof of criminal convictions.* A certified copy of the court record or docket entry of a finding that an attorney is guilty of any crime, or of a plea of guilty or nolo contendere by an attorney to a charge of any crime, shall be conclusive evidence of the commission of that crime in any disciplinary proceeding based thereon.

5. *Attorney Grievance Comm'n of Md. v. Wilde*, No. 25749–M (Md.Cir.Ct. Mar. 30, 2011).

in any federal court," applies only to domestic state and federal courts. The Board also observed that in some foreign jurisdictions, "the smallest of infractions may be deemed felonies," and that in others, "the rights provided to defendants accused of criminal conduct are so lacking that no reviewing body in the United States would find that the accused had a fair trial."

██ The Board rejected the proposition that the rule "could be construed to allow the Court and the Board to determine, on a case by case basis, which countries' procedures and laws are sufficient to allow for a finding of temporary suspension and moral turpitude *per se.*" First, the Board stated, the language of the rule gives no indication that this court, in adopting the rule, intended such an approach. Second, argued the Board, determining which countries' procedures and laws are sufficient to merit our reliance for suspension and disbarment, and which are not, would be an extraordinarily difficult and subjective task. After this court received the Board's Report and Recommendation, it lifted the order that temporarily suspended respondent from the practice of law.[6]

## B. Positions of the Parties Regarding Application of D.C.Code § 11–2503(a) and D.C. Bar R. XI, § 10, to Foreign Convictions

The decision whether foreign convictions must automatically be given preclusive ef-

fect in our bar disciplinary system will depend, ultimately, on our determination of the meaning of the word "conviction" as it is used in D.C.Code § 11–2503(a) and in D.C. Bar R. XI, § 10. Before reaching that determination, however, we will summarize the principal contentions of the parties regarding the consequences of the decision whether foreign convictions are, like convictions within the United States, to automatically be given conclusive effect under the above statute and rule. Until this time, it has not been necessary to resolve this question, as is evidenced by the fact that this is the first case to raise this issue in this jurisdiction. But Bar Counsel anticipates, we think reasonably, that the increased globalization of the practice of law, and the greatly increased number of lawyers licensed in the United States who practice in foreign countries, may well give rise to more such cases.

In support of the exceptions Bar Counsel filed to the report and recommendation of the Board, it argues that the proper policy is to apply § 10 to foreign convictions. It argues that to do otherwise would frustrate the purposes of attorney discipline, and give a "free pass" to attorneys convicted of crimes in other countries. Bar Counsel also states that failure to recognize convictions entered in foreign courts would run counter to D.C. Bar R. XI, § 2(a), which states that "[t]he license to practice law in the District of Columbia

---

**6.** The Board also rejected Bar Counsel's argument that this court's treatment of the conviction as a "serious crime" when it had previously ordered a temporary suspension established the law of the case. It stated that a temporary suspension is, by its nature, a preliminary determination rather than a full adjudication on the merits. Because respondent's suspension was lifted, however, the "law of the case" issue has been mooted. Under the "law of the case" doctrine, "once the court has decided a point in a case, the

point becomes and remains settled law unless or until it is reversed or modified by a higher court." *Lenkin Co. Mgmt., Inc. v. District of Columbia Rental Hous. Comm'n,* 677 A.2d 46, 48 (D.C.1996) (citation and internal quotation marks omitted). Since this court's October 14, 2011, order lifted the suspension, the implicit basis of the January 12, 2011, temporary suspension order—that the foreign judgment served as a basis for lawyer disciplinary action—is not even arguably "the law of the case."

is a continuing proclamation by this Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and an officer of the Court."

Bar Counsel expresses concern that if convictions in foreign countries are not deemed within the sweep of § 10, it would be placed in the position of having to bring an original proceeding based upon the attorney's behavior that led to conviction. It contends that "to establish the misconduct would be difficult, if not impossible, in almost all cases." In particular, Bar Counsel notes the twenty-five-mile limit on the reach of subpoenas it can use, cites limitations on its use of depositions, and adds that it would be challenging enough to bring an original proceeding based, for example, upon a criminal offense in nearby Baltimore, and such difficulties would be multiplied exponentially in the case of a crime committed outside the United States.

The Board contends that Bar Counsel is indeed able to bring an original action based on foreign criminal conduct, and in fact has considerable subpoena power, not only locally, pursuant to D.C. Bar R. XI, § 18(f),[7] but also in other jurisdictions pursuant to the rules of those jurisdictions. Bar Counsel can also seek a temporary suspension under D.C. Bar R. XI, § 3(c), upon a showing by affidavit that the attorney poses a substantial threat of serious harm to the public. The Board also notes that treaties and executive agreements may facilitate the taking of testimony of United States citizens abroad and that liberal standards of admissibility of evidence can make pursuit of an original action more feasible.

The Board emphasizes a practical problem different from the problems Bar Counsel would face in bringing an original proceeding. In support of its position that foreign convictions should not be viewed as covered by § 10, the Board expresses its concern at the prospect of having to decide, on a case-by-case basis, whether the legal system of a given foreign country afforded a criminal defendant due process and fundamentally fair procedures.[8]

Regarding the adequacy of the procedures in South Korea that attended respondent's conviction, the parties express strongly opposing views.[9] Respondent and the Board argue that the South Korean courts do not afford litigants "all the rights and protections enjoyed under the U.S.

---

7. D.C. Bar R. XI, § 18(f), provides:

 *Request for Foreign Subpoena in Aid of Proceeding in this Jurisdiction.* In a lawyer discipline or disability investigation or proceeding pending in this jurisdiction, both Bar Counsel and a respondent may apply for the issuance of subpoenas in other jurisdictions, pursuant to the rules of those jurisdictions, where such application is in aid of such investigation or proceeding or in defense thereto, and to the extent that Bar Counsel or the respondent could issue compulsory process or obtain formal prehearing discovery under the provisions of this Rule or the rules issued by the Board on Professional Responsibility.

8. In that connection, we observe that usually a particular question of foreign law can be determined by a court as a matter of law. *Hudson Trail Outfitters v. District of Columbia Dep't of Emp't Servs.*, 801 A.2d 987, 989 (D.C. 2002) ("The meaning of a foreign law 'calls for a ruling on a question of law rather than a question of fact.'" (citation and alterations omitted)). The determination, however, of whether a bar member's trial in a foreign nation's judicial system was fundamentally fair and afforded the member the level of due process that courts in this country require would require careful consideration of the facts and circumstances.

9. Discussion of the laws of any foreign nation, in this case South Korea, is in no way meant to disparage its justice system.

Constitution" as do courts in the United States, such as, *inter alia,* trial by impartial judge, trial by jury (as of the time of respondent's conviction),[10] protections against the introduction into evidence of hearsay, the exclusionary rule, and full protection from double jeopardy. Bar Counsel states that South Korea affords criminal defendants "many" of the same rights afforded in the United States, such as an impartial tribunal, presumption of innocence, proof of guilt beyond a reasonable doubt, and, contrary to the position of respondent, a bar against double jeopardy. Procedural differences notwithstanding, Bar Counsel argues that this court, under § 10, can follow a procedure that will enable it to determine whether a respondent's proceedings in a foreign tribunal were fundamentally fair.

## II.

### D.C.Code § 11–2503(a) and D.C. Bar R. XI, § 10, Do Not Apply to Foreign Convictions

As we said above, in order to resolve the question whether foreign convictions must automatically be given conclusive effect pursuant to D.C.Code § 11–2503(a) and D.C. Bar R. XI, § 10, we must discern the meaning of the word "conviction" as used by Congress in adopting § 11–2503(a) and by this court in § 10, which this court adopted primarily to implement § 11–2503(a).

We find particularly instructive the opinion of the United States Supreme Court in *Small v. United States,* 544 U.S. 385, 125 S.Ct. 1752, 161 L.Ed.2d 651 (2005). In *Small,* the Supreme Court construed a statute making possession of a firearm unlawful for any person who has been "con-victed in any court" of a crime punishable by imprisonment for a term exceeding one year. *Id.* at 387, 125 S.Ct. 1752.[11] Small had been convicted of such a crime in a Japanese court. *Id.* In considering whether the statute should be construed to include foreign convictions, the Court pointed out:

> [C]onsidered as a group, foreign convictions differ from domestic convictions in important ways. Past foreign convictions for crimes punishable by more than one year's imprisonment may include a conviction for conduct that domestic laws would permit, for example, for engaging in economic conduct that our society might encourage. They would include a conviction from a legal system that is inconsistent with an American understanding of fairness. And they would include a conviction for conduct that domestic law punishes far less severely.

*Id.* at 389–90, 125 S.Ct. 1752 (citations omitted). The Court observed that the statute's language does not affirmatively convey an intention to reach foreign convictions and that the legislative history did not demonstrate any such intent. *Id.* at 391–93, 125 S.Ct. 1752. It noted that it had adopted "the legal presumption that Congress ordinarily intends its statutes to have domestic, not extraterritorial, application," and it applied the same presumption to the phrase "convicted in any court." *Id.* at 388–89, 125 S.Ct. 1752. The Court determined that the language "in any court" referred only to courts in the United States. *Id.* at 394, 125 S.Ct. 1752. It therefore held that the conviction in a Japanese court was not a conviction within the meaning of the statute. *Id.*

---

**10.** The parties agree that trial by jury was not available in South Korea at the time of respondent's conviction, but is available now.

**11.** *See* 18 U.S.C. § 922(g)(1) (2003).

■ This court has previously applied principles of statutory construction applicable generally to acts of Congress in construing D.C.Code § 11–2503(a). *See In re McBride,* 602 A.2d 626, 637–38, 640–41 (D.C.1992) (holding that D.C.Code § 11–2503(a) does not require lifetime disbarment for conviction of crime of moral turpitude). *Small* is highly relevant to a determination of the intent of Congress in adopting D.C.Code § 11–2503.[12] We apply *Small's* teaching in construing § 11–2503, and hold that the words "convicted" and "conviction" in § 11–2503 do not include convictions in courts of foreign countries. As the primary reason for the adoption of D.C. Bar R. XI, § 10, was to implement D.C.Code § 11–2503(a), we must bear in mind the construction of § 11–2503 in construing § 10.

This court promulgates the District of Columbia Bar Rules "in the exercise of its inherent powers over members of the legal profession," D.C. Bar R., Preamble, and pursuant to its statutory authority to govern admissions to its bar. D.C.Code § 11–2501(a) (2001). The statute provides that this court "shall make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion." *Id.* Accordingly, we consider § 10 as both a means of implementing D.C.Code § 11–2503(a) and a rule adopted in the exercise of the court's general authority to govern the bar.

We turn now to the specific language of § 10. At the heart of Bar Counsel's position is the contention that the "broad language of … § 10 … support[s] application of § 10's provisions to respondent's criminal conviction for theft by the South Korean courts." The pertinent language of § 10 refers to an attorney convicted "in a District of Columbia court" and to an attorney who was "found guilty of a crime or has pleaded guilty or nolo contendere to a criminal charge in a court outside the District of Columbia or in any federal court." D.C. Bar R. XI, § 10(a).

The Board, to the contrary, does not read this "broad language" to include convictions in the courts of foreign nations. Rather, the Board concludes that the quoted words of the rule "on their face appear to include only domestic state and federal courts." The Board observes that if the language had been intended to encompass foreign jurisdictions, the drafters "could have said: 'in a District of Columbia court, state court, federal court, or a court in any foreign jurisdiction' or used similar language." The Board emphasizes that if inclusion of foreign convictions had been intended, this court undoubtedly would have added to § 10(a) or elsewhere in the rules language setting forth how that was to be accomplished. There is no such language.

We do not agree with Bar Counsel that, in the context of D.C. Bar R. XI, the "broad language" of § 10 should be read to include convictions of crimes in the courts of foreign nations. Nor do we agree with the Board's position that the "plain meaning" of the particular words focused

---

**12.** Unfortunately, there is no relevant "legislative history" regarding the drafting and adoption of the rule language in question. We note, however, that the amendments that resulted in the current language of D.C. Bar R. XI, § 10, were "drafted by the Board on Professional Responsibility (BPR) and were then circulated to the [D.C. Bar] Board of Governors (BOG)." Letter From Frederick B. Abramson, Pres., District of Columbia Bar, to Chief Judge William C. Pryor, District of Columbia Court of Appeals (Oct. 17, 1985) (on file with D.C. Court of Appeals). The D.C. Bar Board of Governors then submitted the proposed language in a petition to this court.

upon—"found guilty of a crime or has pleaded guilty or nolo contendere to a criminal charge in a court outside the District of Columbia or in any federal court"—is so clear as to exclude such foreign convictions.[13]

Rather, we think it appropriate to view D.C. Bar R. XI, and in particular its § 10, by looking at the rule in its entirety. *See Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C.1983) (en banc) (citing *Floyd E. Davis Mortg. Corp. v. District of Columbia*, 455 A.2d 910, 911 (D.C.1983) ("[A] statute is to be construed in the context of the entire legislative scheme[.]")).[14]

 When one considers the entirety of D.C. Bar R. XI and its many detailed provisions regarding disciplinary proceedings, the significance of the absence of any reference in § 10 to convictions in foreign courts becomes apparent. The potential application of § 10 to all convictions entered in the courts of other nations obviously raises a variety of difficult issues. Section 10 deals with many aspects of the treatment of convictions with considerable specificity. *See, e.g.*, § 10(a) (detailing the requirement for notification of the court and Bar Counsel of conviction); § 10(d) (specifying actions to be taken by the court, Bar Counsel, and the Board after there is filed with the court a record or docket entry showing that attorney has been found guilty of, or pleaded guilty to, a charge of a serious crime); *see also* § 11 (detailing provisions for reciprocal discipline). The omission from D.C. Bar R. XI of any provisions whatsoever regarding foreign convictions is glaring. We are satisfied that if § 10 had been meant to apply to foreign convictions and to give them conclusive effect, appropriate specific provisions would have been set forth in the rule. In light of the many considerations that would arise in connection with application of § 10 to foreign convictions, it must be concluded that in completing the formidable task of adopting rules for disciplinary proceedings for the newly created Bar of the District of Columbia, and subsequently adopting amendments to those rules, this court did not consider this matter, and did not include convictions in the courts of foreign nations within the reach of § 10.

Accordingly, we accept and approve the recommendation of the Board and conclude that respondent has not been found guilty of a crime within the meaning of D.C.Code § 11–2503(a) and D.C. Bar R. XI, § 10. This does not end the matter, however.

## III.

### A. Original Proceedings

Our conclusion that respondent has not been found guilty of a "crime" within the meaning of the foregoing statute and rule

---

**13.** Plain meaning is usually ascertained by considering applicable canons of construction, including ordinary meaning, canons of word association such as *noscitur a sociis* and *ejusdem generis*, canons of negative implication such as *inclusio unius*, grammatical rules, and others. *See* William N. Eskridge, Jr., Philip P. Frickey & Elizabeth Garrett, Legislation and Statutory Interpretation 259–271 (2d ed.2006).

**14.** Under what is sometimes referred to as the "whole act rule," language that seems ambiguous in isolation may be clarified by the remainder of the section of the rule. *See* William N. Eskridge, Jr., Philip P. Frickey & Elizabeth Garrett, Legislation and Statutory Interpretation 271–283 (2d ed.2006); *see also Meredith v. Fed. Mine Safety & Health Review Comm'n*, 336 U.S.App.D.C. 209, 221, 177 F.3d 1042, 1054 (1999) (stating that the "cardinal rule" is to read the statute as a whole, "since the meaning of statutory language, plain or not, depends on context") (citations and internal quotation marks omitted).

is made without prejudice to Bar Counsel's initiating original proceedings against respondent pursuant to D.C. Bar R. XI, § 8. Given the likelihood of an original § 8 proceeding in this case or a similar case, it is incumbent upon us to address the availability of the offensive use of collateral estoppel in such a proceeding. As this issue was not addressed by the parties in their briefs or at oral argument, we *sua sponte* ordered the parties to file supplemental briefs setting forth their positions. Having considered those briefs, we conclude that although a foreign conviction cannot automatically be given collateral estoppel effect under D.C.Code § 11–2503(a) and D.C. Bar R. XI, § 10, such a conviction may be given collateral estoppel effect in an original proceeding under § 8, provided that, upon consideration of the findings and recommendation of the Hearing Committee, the Board determines, in the exercise of discretion, that it would be fair and reasonable to do so. We now turn to a more detailed discussion of the role that offensive collateral estoppel may play in bar discipline proceedings based upon a conviction in a foreign court.

### B. Non–Mutual Offensive Collateral Estoppel

 This jurisdiction has long permitted the use of non-mutual offensive collateral estoppel.[15] *See, e.g., K.H., Sr. v. R.H.*, 935 A.2d 328, 333 (D.C.2007) (citing,

*inter alia, Ali Baba Co. v. WILCO, Inc.*, 482 A.2d 418, 423 (D.C.1984)). "Proper application of non-mutual offensive collateral estoppel requires a two-step inquiry." *Modiri, supra* note 15, 904 A.2d at 395. "In the first step, the trial court must determine whether a case meets the traditional requirements for invoking collateral estoppel." *Id.* The doctrine of collateral estoppel, or issue preclusion,

> renders conclusive ... [the] determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.

*Id.* at 394 (quoting *Davis v. Davis*, 663 A.2d 499, 501 (D.C.1995)). "To guard against unfairness in [the] ... context [of non-mutual offensive collateral estoppel], the trial court adds a second step to its inquiry and considers the fairness of applying collateral estoppel to the facts of the case." *Id.* (citing *Ali Baba, supra*, 482 A.2d at 423).

The Supreme Court's opinion in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), sets forth the rationale for the offensive use of non-mutual collateral estoppel, and explains the Court's conclusion that "the

---

**15.** " 'Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party.' " *Modiri v. 1342 Rest. Grp., Inc.*, 904 A.2d 391, 394 (D.C.2006) (quoting *United States v. Mendoza*, 464 U.S. 154, 159 n. 4, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984)). "When one who was not a party to the original suit invokes collateral estoppel to prevent relitigation of an issue by a party to the original suit or his privy, application of the doctrine is called 'non-mutual.' " *Id.* (citing *Blonder–*

*Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 349–50, 91 S.Ct. 1434, 28 L.Ed.2d 788, (1971) (overruling a prior decision requiring mutuality of parties in order to apply doctrines of res judicata and collateral estoppel)). "In some cases, such as this one, the doctrine is used both offensively and non-mutually—'non-mutual offensive collateral estoppel.' In this brand of estoppel, a plaintiff seeks to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Id.* (internal quotation marks and citation omitted).

preferable approach for dealing with these problems [that attend its use] in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." *Id.* at 331, 99 S.Ct. 645 (footnote omitted). As the Supreme Judicial Court of Massachusetts observed in a bar discipline case, "[t]he offensive use of collateral estoppel is a generally accepted practice in American courts." *Bar Counsel v. Bd. of Bar Overseers,* 420 Mass. 6, 647 N.E.2d 1182, 1184 (1995) (internal quotation marks and citations omitted).

We emphasized in *K.H., Sr.* the care with which a court must proceed in this area: "This court, while permitting non-mutual collateral estoppel, has noted that it applies the doctrine 'with some caution ... because it 'presents issues relating to the potential unfairness to a defendant.'" 935 A.2d at 333 (quoting *Newell v. District of Columbia,* 741 A.2d 28, 36 (D.C.1999)). "[W]here ... the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow [its] use." *Parklane, supra,* 439 U.S. at 331, 99 S.Ct. 645.

"Thus, following the lead of the Supreme Court, this court ... has recognized various factors for consideration in determining whether [the offensive use of non-mutual collateral estoppel] would be fair." *K.H., Sr., supra,* 935 A.2d at 333–34 (citations omitted). Going into considerable detail, we said:

> These factors include:
>
> > (1) whether the first suit was for a trivial amount while the second was for a large amount;
> >
> > (2) whether the party asserting the estoppel could have effected joinder between himself and his present adversary, but did not do so;

> > (3) whether the estoppel is based on one of conflicting judgments, another of which is in defendant's favor;
> >
> > (4) whether there are significantly different procedural advantages available to the defendant in the second suit which could affect the outcome.
>
> [*Ali Baba, supra,* 482 A.2d at 423] (citing 1B MOORE'S FEDERAL PRACTICE ¶ 0.441 [3.–4] (2d ed.1982) (other citation omitted)). MOORE'S FEDERAL PRACTICE lists several additional factors, including:
>
> > (1) whether application of the doctrine would be unfair to the defendant under the circumstances;
> >
> > (2) whether the defendant had a full and fair opportunity to litigate;
> >
> > (3) whether the defendant had the incentive to defend vigorously in the first suit;
> >
> > (4) whether the defendant had the ability to foresee additional litigation.
>
> 18 MOORE'S FEDERAL PRACTICE § 132.04[2][c] (3d ed.2007). The RESTATEMENT (SECOND) OF JUDGMENTS, which *Ali Baba* cites with favor, *see* 482 A.2d at 423 n. 14, lists additional factors, including whether:
>
> > (1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;
> >
> > * * *
> >
> > (5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;
> >
> > (6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent ac-

tion or prejudice the interests of another party thereto;

(7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;

(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.

RESTATEMENT (SECOND) OF JUDGMENTS, § 29 (1982).

*K.H., Sr., supra,* 935 A.2d at 334. While some of the listed factors are overlapping, and many have no application to bar discipline cases, their breadth serves to emphasize the care that a tribunal must use in exercising discretion regarding the use of non-mutual offensive collateral estoppel.

## C. Non–Mutual Offensive Collateral Estoppel in Bar Discipline Cases

■ In bar discipline cases in this jurisdiction, Congress has provided, in D.C.Code § 11–2503(a), for giving offensive collateral estoppel effect to convictions involving moral turpitude. This court has further provided for the regular application of offensive collateral estoppel in a significant category of bar discipline cases by adopting D.C. Bar R. XI, § 11(c), which calls for the imposition of reciprocal discipline on members of the D.C. Bar upon

whom discipline has been imposed by another disciplining court,[16] and by adopting D.C. Bar R. XI, § 10(f), which provides that a conviction of a crime other than a serious crime "shall be conclusive evidence of the commission of that crime in any disciplinary proceeding based thereon." [17] It appears that the majority of other jurisdictions apply offensive collateral estoppel, generally, in bar discipline cases. *See, e.g., In re Segal,* 430 Mass. 359, 719 N.E.2d 480, 485 (1999) ("[G]eneral rules of collateral estoppel govern [bar discipline cases]."); *Office of Disciplinary Counsel v. Kiesewetter,* 585 Pa. 477, 889 A.2d 47, 54 (2005) (attorney collaterally estopped in bar discipline case on basis of federal court's civil judgment for fraud established by clear and convincing evidence); *In re Capoccia,* 272 A.D.2d 838, 709 N.Y.S.2d 640, 642–48 (2000) (attorney collaterally estopped in bar discipline case on basis of sanctions in sixteen state cases and one federal case for failure to follow rules of court); *In re Caranchini,* 956 S.W.2d 910, 912–14 (Mo.1997) (non-mutual offensive collateral estoppel applied in bar discipline case on basis of federal court sanctions for same activity); *In re Bruzga,* 142 N.H. 743, 712 A.2d 1078, 1079 (1998) (holding that, in future cases, offensive collateral estoppel may be used in bar discipline proceedings when a prior proceeding employed a burden of proof equaling or exceeding the clear and convincing burden governing bar discipline proceedings); [18]

---

**16.** "Under principles of collateral estoppel, in reciprocal discipline cases we generally accept the ruling of the original jurisdiction, even though the underlying sanction may have been based on a different rule of procedure or standard of proof." *In re Benjamin,* 698 A.2d 434, 440 (D.C.1997) (citing *In re Richardson,* 602 A.2d 179, 181 (D.C.1992) (collecting cases)).

**17.** "Similar rules or statutes [giving conclusive effect to criminal convictions] are found in many states." *Attorney Grievance Comm'n*

*of Maryland v. Mandel,* 294 Md. 560, 451 A.2d 910, 914 (1982) (collecting cases).

**18.** We note that in *In re Bruzga, supra,* the New Hampshire Supreme Court concluded that collateral estoppel would not apply in any disciplinary matter in which the prior proceeding predated its opinion in that case, as it viewed its holding as an expansion of its rules. 712 A.2d at 1080. However, as the use of collateral estoppel is a long-recognized and generally accepted practice in American courts, we see no reason to limit our holding

*cf. In re Owens,* 125 Ill.2d 390, 126 Ill.Dec. 563, 532 N.E.2d 248, 252 (1988) (declining to give offensive collateral estoppel effect to factual findings underlying a state court's judgment for fraud established by clear and convincing evidence, but noting that it "can more confidently rely on a criminal conviction as resting on accurate factual findings" where "an attorney who has been found guilty of a criminal offense ... has been so found only after he has made every reasonable effort to cast doubt on his guilt"); *but cf. In re Strong,* 616 P.2d 583, 587 (Utah 1980) (declining to give offensive collateral estoppel effect to factual findings underlying a federal court's judgment for fraud because to do so would be contrary to the obvious intent of a Utah statute "that requires the Board to make its own findings based upon [its own] evidentiary hearing," but concluding that the record in the prior civil proceeding would be admissible as evidence where relevant in disbarment hearing).

The ruling of the Supreme Judicial Court of Massachusetts in *Bar Counsel v. Bd. of Bar Overseers, supra,* is especially instructive here. The United States District Court for the District of Massachusetts had entered judgment against the respondent attorney in a civil action for violations of federal securities law, fraud, and breach of fiduciary duty. 647 N.E.2d at 1184. The Board of Bar Overseers sought guidance from the rules committee of the court on how to proceed with respect to application of principles of issue preclusion. *Id.* at 1183. The rules committee declined to act, as the issue concerned a case then pending before the Board. *Id.* The court then proceeded to

consider the case and, noting that offensive collateral estoppel is a generally accepted practice in American courts, remanded the case with instruction that the Board consider whether it should be applied in that case. *Id.* at 1186. The court emphasized that "[b]efore the doctrine of collateral estoppel can be used offensively, the fact finder should be afforded wide discretion in determining whether to do so would be fair to the defendant." *Id.* at 1185 (citation omitted). After referring to the circumstances listed in the RESTATEMENT (SECOND) OF JUDGMENTS, *supra,* § 29, the court again emphasized the responsibility of the fact-finder to exercise discretion in determining, in the first instance, whether issue preclusion should apply, and noted that the fact-finder should have "wide latitude" in this regard. *Id.* at 1185–86.

The Supreme Judicial Court also referred to the RESTATEMENT (SECOND) OF JUDGMENTS, *supra,* § 29, in *Whitehall Co., Ltd. v. Barletta,* 404 Mass. 497, 536 N.E.2d 333, 335–37 (1989), when it remanded a civil case to the trial court with instruction to determine whether it would be fair to give offensive collateral estoppel effect to a civil judgment entered in federal court. The court emphasized, "[i]n remanding, we do not attempt to usurp the power of the [fact-finder] and, accordingly, do not, in any way, dictate or even suggest the outcome." *Id.* at 337.

## D. Recognition of Foreign Judgments

The practice of recognizing foreign judgments as a matter of comity has been widely followed in the courts of this country.[19] A leading precedent is *Hilton v.*

to foreign convictions entered after the issuance of this opinion. Thus, the doctrine of collateral estoppel would be available if Bar Counsel brings an original proceeding in this case.

19. "[R]ecognition of judicial decrees of foreign countries is based upon comity and not ... upon full faith and credit under the Federal Constitution." *Butler v. Butler,* 239 A.2d 616, 618 (D.C.1968).

*Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), in which the Supreme Court dealt with the issue at great length in considering whether to give res judicata effect[20] to a civil judgment of a French court. The Court stated:

> In view of all the authorities upon the subject, ... we are satisfied that where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law

or in fact. The defendants, therefore, cannot be permitted, upon that general ground, to contest the validity or the effect of the judgment sued on.

*Id.* at 202–03, 16 S.Ct. 139.[21] Courts in this country continue to apply the *Hilton* standards when deciding whether to recognize a foreign judgment under principles of comity. *See, e.g., de Csepel v. Republic of Hungary,* 404 U.S.App.D.C. 358, 714 F.3d 591, 606 (2013) (noting that recognition of foreign judgments is governed by principles of comity as explained in *Hilton*); *Dart v. Dart,* 460 Mich. 573, 597 N.W.2d 82, 85–86 (1999) (same); *Nicol v. Tanner,* 310 Minn. 68, 256 N.W.2d 796, 802–03 (1976) (same). Indeed, this court has cited *Hilton* favorably in noting that "[a] foreign judgment is enforceable in an American court only if there has been an opportunity for a full and fair trial in a foreign court of competent jurisdiction after proper service or voluntary appearance by the defendant and under a judicial system which does not violate American public policy." *Garvey v. Garvey,* 445 A.2d 650, 651 n. 2 (D.C.1982) (citing *Hilton, supra,* 159 U.S. at 202, 16 S.Ct. 139); *see also Butler, supra* note 19, 239 A.2d at 618 (courts of the District of

---

**20.** Although the term "res judicata," "in its broadest sense, ... can refer, *inter alia,* to issue preclusion," here the term is used "in its narrow sense as referring only to claim preclusion," *Carr v. Rose,* 701 A.2d 1065, 1074 n. 20 (D.C.1997) (internal quotation marks and citation omitted), as *Hilton* dealt with the enforcement of a judgment rather than its collateral use.

**21.** The Supreme Court, however, ruled that the French judgment should not be given res judicata effect because the courts of France at that time refused to grant such effect to judgments of courts of the United States. *Id.* at 210, 215, 16 S.Ct. 139. The Court decided that for that reason the courts of this country should not, on grounds of comity, recognize judgments of French courts. *Id.* at 228, 16 S.Ct. 139. The four dissenting justices took exception to the limiting proposition that

comity should be extended to judgments in foreign courts *only* if judgments of courts in this country are treated reciprocally. *Id.* at 229, 234–35, 16 S.Ct. 139 (Fuller, C.J., dissenting). We note that since *Hilton* was decided in 1895 the reciprocity requirement appears to have fallen into disfavor. *See* 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4473 & n. 10 (2d ed.2002). The U.S. Court of Appeals for the District of Columbia Circuit has stated that "[i]t is unlikely that reciprocity is any longer a federally mandated requirement for enforcement of foreign judgments.... The reciprocity doctrine has been widely criticized and seldom invoked." *Tahan v. Hodgson,* 213 U.S.App.D.C. 306, 312 & n. 21, 662 F.2d 862, 867 & n. 21 (1981) (citations omitted).

Columbia can recognize a judicial decree of a foreign court on the basis of comity).[22]

Several courts have acknowledged that comity may also be extended to grant collateral estoppel (issue preclusion) effect to foreign judgments. *See Bata v. Bata,* 163 A.2d 493, 507 (Del.1960), *cert. denied,* 366 U.S. 964, 81 S.Ct. 1926, 6 L.Ed.2d 1255 (1961) ("We see no reason in principle why the rule of collateral estoppel should not in a proper case be applied to a foreign judgment."); *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics,* 905 F.Supp. 169, 178–79 (S.D.N.Y.1995) ("It is well-established that United States courts ... may choose to give [collateral estoppel] effect to foreign judgments on the basis of comity.... [I]t is primarily principles of fairness and reasonableness that should guide domestic courts in their preclusion determinations." (citing *Bata, supra,* 163 A.2d at 507)); *see generally* RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW, § 481, comment (b) (1987) ("Whether a foreign judgment should be recognized, may be in issue ... not only ... in enforcement ... [or] where the defendant seeks to rely on a prior adjudication of a controversy (*res judicata* ), [but also] where either side in a litigation seeks to rely on prior determination of an issue of fact or law.").

Recently, in *Hurst v. Socialist People's Libyan Arab Jamahiriya,* 474 F.Supp.2d 19, 32–33 (D.D.C.2007), the United States District Court for the District of Columbia gave offensive collateral estoppel effect to a foreign conviction by a Scottish court. The judgment of the High Court of Justiciary, composed of three Scottish Judges, found a Libyan, Ali Al–Megrahi, guilty beyond a reasonable doubt of the murder of the passengers and crew of a Pan Am flight that exploded over Lockerbie, Scotland. *Id.* In determining whether to give preclusive effect to the findings of fact underlying Al–Megrahi's conviction, the District Court applied "the *Hilton* requirements for recognition of a foreign judgment and ... the requirements for collateral estoppel," which "share the same underlying principles and concerns." *Id.* at 33–34 (citations omitted). The District Court concluded that the foreign judgment met "the standards for recognition and preclusion," and granted summary judgment to the plaintiffs, family members of the murder victims, on the basis of the High Court's judgment, which had been affirmed on appeal. *Id.* at 33–36.

### E. Non–Mutual Offensive Collateral Estoppel in Bar Discipline Matters Based on a Foreign Conviction

We are aware of only one case in which a court in this country has imposed discipline on a member of its bar on the basis of a conviction in a court of a foreign country. *In re Scallen,* 269 N.W.2d 834, 835 (Minn.1978), was a disciplinary proceeding brought against a member of the bar of Minnesota on the basis of his 1973 conviction in Canada of "theft and publishing and circulating a false prospectus."

**22.** We note that the United States District Court for the District of Columbia, applying the *Hilton* standards, recently recognized the civil judgment of a South Korean court, declaring valid a settlement agreement between a plaintiff and defendants; the defendants had prevailed regarding the validity of the settlement in the Seoul Central District Court, then lost on appeals to the Seoul High Court (court of intermediate appeals) and the Supreme Court of the Republic of Korea. *LG Display Co. Ltd. v. Obayashi Seikou Co., Ltd.,* 919 F.Supp.2d 17, 20–23, 27–32 (D.D.C. 2013), *reconsideration denied,* —— F.R.D. ——, 2013 WL 1680038 (D.D.C. Apr. 18, 2013); *see id.,* 919 F.Supp.2d at 32, 2013 WL 314760, at *11 (noting that "U.S. courts routinely enforce judgments rendered by Korean courts" (citing cases)).

As the Minnesota Supreme Court noted: "[I]t is undisputed that when Scallen was convicted [by the Canadian court] there was nothing in either the [Minnesota] Code of Professional Responsibility or [the Minnesota Supreme Court's] rules governing disciplinary proceedings which was specifically addressed to criminal convictions in other countries." *Id.* at 839.[23]

The Minnesota court was satisfied that Scallen's trial in Canada before a jury of twelve was fundamentally fair by American standards. *Id.* at 840. It noted the common ancestry of the Canadian and American systems of justice, and that such matters as burden of proof, rules of evidence, and manner of conducting the trial were all identical or substantially similar to American counterparts. *Id.* The court declined to order the matter relitigated, and accepted the results of the Canadian jury trial as conclusive for purposes of bar discipline. *Id.* at 840–41. In *Scallen*, the Minnesota Supreme Court applied the principles of offensive collateral estoppel and comity that we have discussed above.

■ Having considered the manner in which offensive collateral estoppel is used in the courts of this country, and the widespread practice of recognizing foreign judgments on the basis of comity, we conclude that this court should permit foreign convictions to be considered in original bar discipline proceedings. When a member of the District of Columbia Bar is reported to have been convicted of a crime in a court of a foreign country, Bar Counsel may in its discretion institute an original proceeding pursuant to D.C. Bar R. XI, § 8.

■ Obviously, a § 8 proceeding is fundamentally different from a § 10 proceeding. Most significant, in an original proceeding preclusive effect will not automatically attach if it is established that a criminal conviction was in fact entered against the respondent in a foreign country. Rather, Bar Counsel would have the burden of persuading initially the Hearing Committee and ultimately the Board, by a clear and convincing showing, that it would be fair and reasonable to grant collateral estoppel effect to the foreign conviction. *See In re Anderson,* 778 A.2d 330, 335 (D.C.2001) ("'[T]he general rule [is] that '[t]he burden of proving the [disciplinary] charges rests with Bar Counsel[,] and factual findings must be supported by clear and convincing evidence....'" (quoting *In re Williams,* 464 A.2d 115, 119 (D.C. 1983))). The Board and its Hearing Committee, insofar as they act as finders of fact and draw conclusions of law,[24] will be expected, as the Supreme Court said in *Parklane, supra,* to exercise broad discretion in determining whether to attach collateral estoppel effect to a foreign judgment entered against the respondent. 439 U.S. at 331, 99 S.Ct. 645.

The Hearing Committee would initially have the task of (1) ascertaining the relevant laws and procedures of the foreign country, and (2) determining also what procedures were actually followed in the respondent attorney's proceedings. It would also be called upon to make its recommendation to the Board regarding

---

**23.** It appears that, as of January 1, 1977, over three years after Scallen's foreign conviction, the Minnesota Supreme Court's disciplinary rules provided that "interim suspension, pending a full-fledged disciplinary proceeding, may be imposed on a Minnesota attorney who has been convicted of a crime in the United States *or elsewhere....*" *Id.* at 839 (emphasis added) (citing Minnesota State Rules on Lawyers Professional Responsibility, Rule 17(a) (1977)).

**24.** *See* D.C. Bar R. XI, §§ 4(e)(7), 5(c)(1)-(2), 9(a)-(d).

whether the procedures were sufficiently fair to warrant being given preclusive effect.[25] The Board would then conduct post-hearing proceedings as required by D.C. Bar R. XI, § 9, and submit its report to this court.[26]

## IV.

In sum, we conclude that a criminal conviction entered in a foreign country is not a "conviction of [a] crime" within the meaning of D.C.Code § 11–2503(a) and D.C. Bar R. XI, § 10, and therefore, cannot automatically be given collateral estoppel effect in bar discipline proceedings. However, a foreign conviction may be given collateral estoppel effect in an original proceeding under D.C. Bar R. XI, § 8, provided that, upon considering the findings and recommendation of the Hearing Committee, the Board determines, in the exercise of discretion, that it would be fair and reasonable to do so.

It is, therefore;

ORDERED that the disciplinary action against respondent under D.C. Bar R. XI § 10(a), No. 10–BG–1351, be dismissed, without prejudice to Bar Counsel's initiating proceedings regarding respondent pursuant to D.C. Bar R. XI, § 8.

---

25. While the tasks of ascertaining the relevant laws and procedures of the foreign country and determining what procedures were actually followed in the proceeding in question may be difficult in some cases, that will not be true in cases like *Scallen,* where the proceeding was conducted in Canada with a jury of twelve under procedures very similar to those imposed in our courts. It would also be less difficult to deal with cases tried in the same language as is used in our courts.

26. At various points during the course of this proceeding, both Bar Counsel and the Board have made suggestions concerning amendments to D.C. Bar R. XI. To the extent that either Bar Counsel or the Board sees fit, it may address a formal request to the court recommending amendments to D.C. Bar R. XI.